# Richmond

SAMUEL LONGMAN *v.* COMMONWEALTH OF VIRGINIA.

November 12, 1936.

Present, All the Justices.

The opinion states the case:

*James G. Martin* and *Herman A. Sacks*, for the plaintiff in error.

*Abram P. Staples, Attorney-General,* and *Edwin H. Gibson, Assistant Attorney-General,* for the Commonwealth.

Eggleston, J., delivered the opinion of the court.

The petitioner, Samuel Longman, has been found guilty by a jury of receiving stolen goods knowing them to have been stolen, and sentenced to confinement in the penitentiary for a year and a day.

The principal assignment of error is that the verdict is contrary to the law and the evidence and without evidence to support it.

In the light of the jury's verdict the record discloses these facts: The Old Dominion Tobacco Company is a wholesale dealer in cigarettes, cigars and other tobacco products, with its place of business in the city of Norfolk. One of its customers was the petitioner who conducted a grocery store on Duke street, in said city. He had been in a similar busi-

ness for more than thirty years and, prior to the occurences hereinafter related, bore a good reputation.

On the afternoon of November 30, 1934, Leon Nowitzky, a detective in the Norfolk city police department, was watching the store of the accused. He saw a negro, Charlie Moore, drive up in one of the trucks of The Old Dominion Tobacco Company and take therefrom and carry into the store what appeared to be a carton containing 10,000 cigarettes. Nowitzky saw Moore deliver the package to the accused and receive from him some money.

About 5:00 P. M. on December 3, 1934, Nowitzky, in company with two other officers, again stationed himself near the Longman store. He saw Moore again drive up in the same truck and carry into the store a carton about two feet long and one foot wide.

As soon as Moore had gone into the store Nowitzky came up and looked through the window. He saw the accused having some negotiations with a man across the counter. On entering the store the detective found the accused with a customer and not, as he had thought, with Moore who was standing about five feet away drinking a bottle of coca-cola. Nowitsky went up to the accused and demanded that he surrender the cigarettes which Moore had just brought into the store. Longman denied that any cigarettes had been brought in, but finally, at the insistence of the detective, pointed to a carton behind the counter. The package was found to contain 10,000 Lucky Strike cigarettes and was identified as having been stolen from the Old Dominion Tobacco Company.

Although the accused denied any previous knowledge of the cigarettes or how they happened to be delivered to his store, they were found behind the counter about four feet from where he was standing. In placing the package there Moore must have passed in plain view of and only a few feet from the accused. According to the testimony of Minyard, the customer with whom the accused was transacting business when the package was brought in, the accused could have seen Moore had he looked.

The Commonwealth proved by Earl Brown, a boy formerly in the employ of the accused, that Moore was a frequent visitor in the Longman store, and that on numerous prior occasions Moore had delivered cigarettes, snuff and other goods to the accused without taking a receipt therefor.

It further appears that Moore's duties consisted in hauling merchandise between the freight depots and the store of the Old Dominion Tobacco Company. He was not authorized to make deliveries to customers, such as the accused. Other drivers were employed for this purpose. He had no authority to deliver to the accused any cigarettes or other merchandise on either November 30 or December 3, 1934.

The accused denied having purchased the cigarettes from Moore on November 30, as testified to by Nowitzky, or having received other merchandise from Moore, as testified to by Brown. These conflicts were, of course, settled adversely to him by the jury's verdict.

The evidence shows that the accused had discharged Brown when he found that the latter was soliciting trade for his uncle who was going into a competitive grocery business. Notwithstanding this, when the accused heard that Brown was to be a witness for the Commonwealth he approached and offered to employ him. This much the accused admits. Brown's testimony went much further. He said the accused proposed that in return for such employment he, Brown, was to modify his testimony so as to favor the accused; that "If they asked me how many cigarettes he [Longman] bought to tell them I did not know."

In *Patterson* v. *Commonwealth*, 165 Va. 734, 736, 181 S. E. 281, 282, we said that to warrant a conviction of the offense with which the accused was here charged, "four things must be proved: '(1) That the goods or other things were previously stolen by some other person. (2) That the accused bought or received them from another person, or aided in concealing them. (3) That at the time he so bought or received them, or aided in concealing them, he knew they had been stolen. (4) That he so bought or received them, or aided in concealing them, *malo animo*, or with a dishonest

intent.' *Hey* v. *Commonwealth*, 32 Gratt. (73 Va.) 946, 34 Am. Rep. 799."

Tested by this formula we think the evidence was sufficient to sustain the verdict of the jury.

That the carton of cigarettes was of the value of more than $50.00 and was stolen from the Old Dominion Tobacco Company was proved beyond question.

While reception of the stolen goods by the accused must be substantially proven, actual physical handling by him is not necessary. It is well settled that constructive possession is sufficient. 53 C. J., page 505, section 8; *Wharton's Criminal Law* (12th Ed.), page 1553, section 1238.

We think the jury was justified in finding from the evidence that the accused at least constructively received the cigarettes from Moore.

It is not at all surprising that the jury declined to accept the story that Moore came into the store, passed in plain view of the accused, within five feet of him, and placed behind the counter, four feet away, a carton two feet long, one foot wide, and weighing fifteen or twenty pounds, without being seen by the accused. Indeed, it would have been strange if the jury had believed that this colored man would walk into the store of this white merchant and, without his knowledge or previous consent, deposit behind the counter a package containing merchandise worth more than $50.

No doubt the jury was influenced by the significant admission from the lips of the accused that Moore had probably brought the goods to his store for the purpose of trying to sell them to him. It is unbelievable that Moore would have done this unless he had felt secure in dealing with the accused—that is, unless the latter had been buying goods from him on other occasions, or unless these goods were being deposited there pursuant to some previous arrangement. Indeed, the fact that Moore had sold or delivered to the accused goods of like character on other occasions justified the jury in inferring that these cigarettes were brought there for the same purpose.

It is argued that there is no evidence that the accused knew

the goods had been stolen. But the circumstances prove otherwise. The accused knew that Moore was not in the business of selling cigarettes, but worked for the Old Dominion Tobacco Company of which he (the accused) was a regular customer. The accused knew that his purchases from that concern were not delivered to him by Moore but by other drivers. He knew that he had not purchased this carton of cigarettes from that company. He likewise knew whence it came for the name was plainly stenciled thereon.

While guilty knowledge is an essential element of the crime of receiving stolen goods, it may be shown by circumstances. 17 R. C. L., page 85, section 92. We think these circumstances were sufficient to justify the jury in believing that the accused knew that the cigarettes had been stolen and that he received them with a dishonest purpose.

In *Stapleton* v. *Commonwealth*, 140 Va. 475, 488, 124 S. E. 237, we held that when goods are shown to have been stolen, recent possession of them is evidence against the possessor, tending to show a guilty receiving by him.

The guilt or innocence of the accused under the evidence was a question for the jury and their verdict is binding on us.

The next assignment of error relates to evidence that the accused had purchased cigarettes from Moore, the alleged thief, on other occasions and particularly on November 30, 1934. The point is made that this testimony was irrelevant and inadmissible because there was no proof that these cigarettes had been stolen; and that, therefore, the court erred in admitting and in not striking out the testimony.

The accused requested an instruction that such evidence should not be considered by the jury. The court refused this request but instructed the jury that such evidence was to be considered "only for the purpose of showing relationship between Moore and Longman." This action of the court is assigned as error.

We think this evidence was relevant and material to show not only the "relationship"—that is the course of dealing

between Moore and the accused—but also the latter's intent to receive the goods.

It was the contention of the accused that the cigarettes had been deposited in his store on December 3rd without his knowledge or consent, and that he had no intention of purchasing or even receiving them. But when the evidence disclosed that on previous occasions Moore had sold and delivered other articles of like character to the accused, this tended to show that Moore had not left the cigarettes there December 3rd by mere chance or accident, but rather pursuant to a course of dealing between him and the accused, as the result of which the latter intended to receive and purchase them.

In 10 Ruling Case Law, page 938, section 105, the principle is thus stated: "Indeed, when the knowledge and intent of a party is a material fact, proof of matters apparently collateral is admissible in many cases, both civil and criminal. The principle on which such evidence is received to show intent or state of mind is simply the principle which the human mind instinctively applies in ordinary affairs of life. If the question be whether a given act was accidental or intentional, the fact that the actor has at numerous times performed similar acts under circumstances excluding the idea of accident is very strong proof that the act under investigation was also intentional."

Since the testimony was relevant and admissible for the purposes stated, the court did not err in refusing to instruct the jury to disregard it. Indeed, it follows from what we have said that the modification of the instruction was more favorable to the accused than he deserved.

We find no error in the proceedings below, and the judgment is affirmed.

*Affirmed.*