## Richmond

PASQUALE PASANELLO v. COMMONWEALTH OF VIRGINIA.

November 29, 1965.

Record No. 6086.

Present, All the Justices.

Frank A. S. Wright (Franklin J. Carter; Walter L. Smith, on brief), for the plaintiff in error.

D. Gardiner Tyler, Assistant Attorney General (Robert Y. Button, Attorney General, on brief), for the Commonwealth.

CARRICO, J., delivered the opinion of the court.

This is a companion case to Parish v. Commonwealth, Record No. 6087, this day decided.

Pasquale Pasanello, the defendant, was indicted by the grand jury upon four counts involving the theft and disposition of certain articles of clothing. He was tried by the court, without a jury, and was found guilty of the offense charged in the second count of the indictment. A sentence of six years in the penitentiary was imposed upon the defendant and he is here upon a writ of error granted by this court.

The second count of the indictment alleged that the defendant, on November 30, 1962, unlawfully and feloniously aided William Kenneth Parish and some evil disposed person in concealing clothing belonging to Ed Michtom's (a men's clothing store in Charlottesville), of the value of more than $50.00, knowing the said clothing to have been stolen. (Code, § 18.1-107.)[1]

The evidence before us is that presented solely by the Commonwealth, inasmuch as the defendant did not testify or present any evidence in his own behalf.

The evidence shows that in early December, 1962, a police officer

---

[1] "§ 18.1-107. Receiving, etc., stolen goods.—If any person buy or receive from another person, or aid in concealing, any stolen goods or other thing, knowing the same to have been stolen, he shall be deemed guilty of larceny thereof, and may be proceeded against, although the principal offender be not convicted."

in Youngstown, Ohio, observed Ralph Gardio, a known "fence", in a bus terminal in Youngstown. Gardio approached the baggage and express agent and inquired about freight coming from Virginia consigned either to Allen Lee or Bill Moore. Gardio was informed that the freight was not on hand at that time.

After Gardio departed, the police officer inquired of the agent concerning the purpose of Gardio's visit. Upon being informed of such purpose, the officer advised the agent to contact the police immediately if a package arrived addressed to either of the consignees named by Gardio.

Some time later, the express agent received a duffel bag consigned to William Moore, shipped from Charlottesville, Virginia, and a cardboard box consigned to Allen Lee, shipped from Lynchburg, Virginia.

The agent contacted the police who, acting under a search warrant, examined the contents of the packages. Each was found to contain large quantities of clothing, some bearing the labels of Ed Michtom's. The duffel bag contained five men's suits from Michtom's, as well as two ladies' coats, one of them bearing the label of Miller and Rhoads. The cardboard box contained five suits from Michtom's, together with men's and ladies' clothing from several other stores in Charlottesville.

The Youngstown police contacted the Federal Bureau of Investigation, since the suspected theft was of property believed to be valued in excess of $5,000. FBI agent Ray was assigned to the case.

The Michtom store was notified of the discovery in Youngstown of the suits bearing its labels. It made an inventory and "found that several suits were missing that were not marked off on the inventory sheet."

The investigation conducted by Agent Ray and the Youngstown police "established that the suits were stolen from" Charlottesville. The Youngstown police department, "following communications and verification of the fact that it was stolen . . . shipped the shipments back to the Charlottesville" police department.

Agent McCarthy of the FBI conducted an investigation in Charlottesville. He found that the defendant, Parish and Louis R. Zogrio had registered at a local hotel on November 29, 1962. He established that the defendant had listed an automobile bearing California license plates. The agent secured a copy of the California registration, show-

ing a 1961 model Cadillac registered in the name of the defendant at a Hollywood, California, address.

The agent also secured a brochure from the Los Angeles police department "containing the photographs and descriptions of approximately thirty individuals known as the Halifax or Providence gang in the Los Angeles area." He also secured recent photographs of the defendant, Parish and Zogrio from the FBI files in Washington. He took the photographs "to the various stores which had apparently been victimized and displayed the photographs . . . and at various stores a number of people selected the photographs of *Parrish* and *Pesanello* as the individuals who had been in the stores."

Several employees of the Michtom store were called as witnesses by the Commonwealth. Each placed the defendant, with Parish and an unidentified third person, in the store, under suspicious circumstances, in the latter part of November or the first part of December, 1962.

An employee of the Trailways bus station in Charlottesville testified that the defendant, employing the name of William Lewis, at 11:40 a.m. on November 30, 1962, shipped a duffel bag containing clothing to William Moore in Youngstown, Ohio. Another employee testified that there was only one package shipped from Charlottesville to Youngstown on November 30.

An employee of the bus terminal in Lynchburg was called as a witness. He stated that the defendant, employing the name of Allen Lee, and Parish, in the afternoon of November 30, 1962, shipped a large cardboard box containing clothing to Allen Lee in Youngstown, Ohio. This witness observed the defendant and Parish leaving the bus station, one of them in a Cadillac automobile bearing either California or New York license plates and the other in a Chevrolet. The witness also saw "a third gentleman which remained in one car."

The defendant's principal contention is that the evidence was insufficient to prove the corpus delicti and to sustain the conviction.

To prove the corpus delicti and to establish the guilt of the defendant, the Commonwealth had the burden of showing four elements, namely: (1) that goods of the value of more than $50.00 were previously stolen from the Michtom store by some other person; (2) that the defendant aided in concealing them; (3) that at the time he so aided in concealing them, he knew they had been stolen, and (4) that he so aided in concealing them with a dishonest intent. *Long-*

*man* v. *Commonwealth*, 167 Va. 461, 464-465, 188 S. E. 144; *Patterson* v. *Commonwealth*, 165 Va. 734, 736, 181 S. E. 281.

The defendant first argues that the Commonwealth did not prove that the clothing belonged to Ed Michtom's at the time of the alleged theft. We find, to the contrary, that the ownership of the goods was conclusively established.

Three employees of the store testified as witnesses for the Commonwealth. Two of them identified the five suits in the duffel bag "as being the property of Ed Michtom's, Inc. . . . marked into the store as part of" its inventory. The other witness identified the five suits in the cardboard box as "part of the stock of Ed Michtom's." Various labels, price tags and handwritten notations on the suits were pointed out by these witnesses to show beyond question that their identification was correct.

The defendant also asserts that the Commonwealth did not establish that the value of the clothing exceeded the statutory amount of $50.00 necessary to sustain a conviction of grand larceny. This assertion we find to have no substance.

Donald Komora, a detective from Youngstown whose qualifications were not questioned and who testified without objection, stated that the value of each of four suits in the duffel bag was $69.50 and that the value of the fifth one was $89.00. Thus, the value of the suits, individually or in total, exceeded the statutory amount.

The defendant next contends that it was not shown that the goods were stolen, that the defendant aided in concealing them, and that he knew they were stolen when he shipped them. We are of opinion that the evidence amply established these necessary elements of the offense.

The testimony of the store employees shows, as has been noted, that the clothing was in stock as a part of the store inventory before the alleged theft. One of the employees stated that, according to store records, the five suits found in the duffel bag had not been sold. Another employee said that the five garments found in the cardboard box had not left the store "through a routine sale." When the suits were discovered in Youngstown, an inventory by Michtom's showed "that several suits were missing that were not marked off on the inventory sheet."

Parish, using the assumed name of Baker, and the defendant, both included in the brochure of the Halifax or Providence gang in the Los Angeles area, registered at the local hotel the night before the

shipments were made. Zogrio also registered at the same hotel on the same night.

The defendant and Parish were identified, from photographs, "as the individuals who had been in the stores" in Charlottesville "which had apparently been victimized."

The defendant, Parish and an unidentified third person were observed in the Michtom store on several occasions around the time the shipments were made. Parish, using another assumed name, Bill Williams, and asserting that he was in the construction business in Richmond, pretended to be interested in purchasing clothing, although in the end he bought nothing. Parish and the defendant wore topcoats which were too large for them. The three did not stay together in the store and the defendant and the unidentified third person left the store on several occasions "to put a nickel in the parking meter" and then returned.

Five of the suits were shipped by the defendant from Charlottesville to a known "fence", or dealer in stolen goods, in Youngstown. On the same day, other suits belonging to Michtom's were shipped by the defendant and Parish, one of whom was accompanied by an unidentified third person, to the same "fence", from Lynchburg. In each instance, the shipment was made under a false name to a false consignee.

Under these circumstances, the conclusion is fully warranted that the clothing in question was removed from the Michtom store by some unidentified person as the result of a larcenous plan and design, participated in by the defendant, Parish and other "evil disposed persons", acting in concert. As a part of that plan and design, the stolen goods were secreted out of Charlottesville and shipped to another state for disposition by a dealer in stolen merchandise. By assisting in carrying out that part of the plan, the defendant, with guilty knowledge and a dishonest intent, aided in concealing the stolen goods. *Snyder* v. *Commonwealth*, 202 Va. 1009, 1016, 121 S. E. 2d 452; *Tasker* v. *Commonwealth*, 202 Va. 1019, 1026, 121 S. E. 2d 459.

■ The defendant contends, however, that his conviction was secured upon improperly admitted evidence which, he says, requires us to reverse the judgment of the trial court.

Here, the defendant first argues that it was improper to admit the evidence relating to the shipment of clothing from Lynchburg. The Charlottesville court, the defendant says, had no jurisdiction of an offense committed in Lynchburg. The defendant also says that the

disputed evidence constituted a fatal variance with the indictment and was irrelevant and immaterial.

This contention is without merit. When goods are stolen and concealed, it is proper to show the connection of the accused therewith wherever they may be traced. Since the defendant and Parish appeared together in Lynchburg in possession of the stolen goods, it would have been proper for the trial court to infer that they participated in secreting the clothing out of Charlottesville. That act of secretion related directly to the offense of aiding in concealing stolen goods in Charlottesville, an act clearly under the terms of the indictment and within the jurisdiction and venue of the trial court.

Moreover, the principle has been established that " '. . . everyone connected with carrying out a common design to commit a criminal act is concluded and bound by the act of any member of the combination, perpetrated in the prosecution of the common design. . . .' " *Boggs* v. *Commonwealth,* 153 Va. 828, 836, 149 S. E. 445.

The secreting of the goods out of Charlottesville was performed pursuant to the common plan and design, carried out by the combination of which the defendant was a part. That being so, the defendant was "concluded and bound" by such action, regardless of the identity of the person who actually secreted the stolen goods out of Charlottesville.

The evidence in question tended to establish the necessary ingredients of the offense with which the defendant was charged. Not the least of these elements was the defendant's dishonest intent in aiding in the concealment of the goods, which the Commonwealth was required to prove. Such an intent not only may, but usually must, be shown by circumstantial evidence. The circumstances of the Lynchburg transaction constituted significant evidence of the defendant's dishonest intent. *Longman* v. *Commonwealth, supra,* 167 Va., at pp. 466-467.

■ The defendant next contends that because the indictment alleged that the offense occurred on November 30, 1962, and that because it was shown that he made the shipments during the daytime on that date, it was improper to admit evidence concerning his activities after the shipments occurred. Here, the defendant cites the testimony of two of the store employees which, he says, absolutely placed him, Parish and the third person in the Michtom store during the evening of November 30 and the morning of December 1.

The defendant says that such evidence was at variance with the indictment.

If it be assumed that the questioned evidence tended to prove the commission of a crime on a date other than that set forth in the indictment, such variance did not render the indictment invalid nor make the defendant's conviction illegal.

Code, § 19.1-172 states that "No indictment . . . shall be . . . deemed invalid . . . for omitting to state, or stating imperfectly, the time at which the offense was committed when time is not the essence of the offense."

And in *Stapleton* v. *Commonwealth*, 140 Va. 475, 488, 124 S. E. 237, it is stated that "it is well understood, that the Commonwealth may prove the commission of the crime charged on a date different from that alleged, and sustain a conviction thereof." See also *Harris* v. *Commonwealth*, 185 Va. 26, 34, 37 S. E. 2d 868; 9 Mich. Jur., Indictments, Informations and Presentments, § 34, p. 683; 52 C. J. S., Larceny, § 103, p. 921, at p. 922.

■ The defendant lastly says that the questioned evidence was immaterial because "no amount of argument can establish that goods shipped from Charlottesville on the morning and from Lynchburg in the afternoon of November 30th were stolen in the evening of that day and on the next morning."

But the evidence of the two store employees, which tended to indicate that the defendant and his associates were in the store after the shipments were made, did not bind the Commonwealth to the theory that the goods could have been stolen only during the visits to the store on the evening of November 30 and the morning of December 1. The two employees testified more than sixteen months after the occurrences in question, and their testimony was based upon mere recollection rather than upon written memoranda. Even the printed record indicates the uncertainty of their recollection as to the dates.

Moreover, another store employee placed the defendant, Parish and the third person in the store "more than once" in late November, 1962. This witness would not agree that the visits observed by him coincided with those related by the other employees.

Thus, under the circumstances, it would have been proper for the trial court to infer that one or more of the visits to the store by the defendant and his associates took place before the shipments were made.

But, even if it be assumed that no one could place the defendant and his accomplices in the store before the shipments were made, that was not destructive of the Commonwealth's case. Nor was the Commonwealth obligated to explain why the three men visited the store after the shipments took place, if that was the situation. Only the defendant and his friends could have made that explanation, and they have chosen not to do so.

The defendant and his accomplices were, according to the evidence, in Charlottesville on at least three days in the latter part of November, 1962, around the time of the theft. What they did with relation to the Michtom store during that period, whether before or after the shipments were made, was relevant and material to proof of the charge against the defendant.

■ The defendant's final contention is that the court erred in not granting his motion to set aside the judgment. What has already been said should be sufficient to dispose of this contention. But it would not be amiss to say that the defendant's real complaint in this case is that his conviction should not stand because the evidence "reduces the Commonwealth's entire proof of time of the offense to speculation and conjecture" and because no one could testify that the defendant and his associates "removed any items" from the store.

It is not surprising, and certainly not fatal to the Commonwealth's case, that no one was able to say exactly at what moment the larceny took place. And it is not an unsual situation that no witness was able to tell by what precise method the goods were removed from the store. Thieves do not usually leave timetables and blueprints of their activities behind them, to chart their prosecutions after they are apprehended.

All that the Commonwealth was required to do under its burden of proof was to establish, beyond a reasonable doubt, the essential elements of the offense of aiding in concealing stolen goods. This the Commonwealth sought to do by circumstantial evidence. When, as here, such evidence is of a convincing character and excludes every reasonable hypothesis other than that the accused is guilty, there is no ground upon which this court may, or will, disturb the judgment of the trial court. *Wright* v. *Commonwealth*, 196 Va. 132, 137, 82 S. E. 2d 603; *Dean* v. *Commonwealth*, 32 Gratt. (73 Va.) 912, 926.

We find no error in the conviction of the defendant. Accordingly, the judgment of the trial court will be

*Affirmed.*