𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

## KENNETH W. WILSON

v.

## COMMONWEALTH OF VIRGINIA

June 8, 1979.

Record No. 781161.

Present: I'Anson, C.J., Carrico, Harrison, Cochran, Poff, and Compton, JJ.

*Burton L. Albert; Harvey S. Lutins (Gordon H. Shapiro; Lutins and Shapiro,* on briefs), for appellant.

*Richard B. Smith, Assistant Attorney General (Marshall Coleman, Attorney General,* on brief), for appellee.

I'ANSON, C.J., delivered the opinion of the Court.

Defendant, Kenneth W. Wilson, was found guilty by a jury of receiving stolen goods[1] having a value of $100 or more, and he was sentenced in accordance with the jury's verdict to confinement in jail for a period of six months.

The defendant contends on this appeal that (1) the trial court erred in failing to rule on his motion to suppress two statements allegedly made by him to certain police officers; (2) the evidence was insufficient to establish the corpus delicti; and (3) the court erred in refusing certain instructions.

The evidence shows that on January 29, 1978 Detective E. C. Manuel of the Roanoke County Sheriff's Department, and Donald H. Boyd, local manager of Litton Office Products Center, trading as Everett Waddey (hereinafter sometimes referred to as Litton or Everett Waddey), accompanied by Charles M. Davis, Jr., went to the basement of the Bramble Inn in Roanoke County for the purpose of ascertaining whether two desks stored there were property stolen from Litton.

Davis, lessee of the basement of the Bramble Inn, testified that approximately three weeks before he went to the Inn with Officer Manuel and Boyd on the night of January 29, he loaned defendant a key to the basement for the purpose of permitting him to store some of his property there. Davis said that within a week thereafter he found two large cartons in the basement.

Boyd testified that after he entered the basement, he found two large cartons containing two steelcase desks which he identified as property of Litton. He stated that one desk had a wholesale value of approximately $180 and the other was valued at approximately $212; that the desks at one time had been in Litton's warehouse as shown by the markings placed on the cartons by Litton's employees; that partly torn labels on the cartons showed Litton's name on them; that from the markings on a carton he could tell the style and type of desk without removing it from the carton; that he had invoices containing the batch numbers for the particular desks; that no one had been authorized to remove these desks from Litton's warehouse; and that he had checked the company's records and he could not find any payment for these particular desks. He said the customary procedure of Everett Waddey in delivering desks to purchasers was to remove the desks from the

---

[1] Code § 18.2-108.

cartons and set them up in useable condition. When that procedure was not followed, representatives of the company would return the next day, remove the desks from the cartons, and take the cartons back to the company's warehouse. He also stated that these particular desks were not sold to distributors for resale; that the cartons containing the desks had never been opened and the steel packing bands around the cartons were intact; and that it would have been impossible to open the cartons without disturbing the bands.

Manuel testified that when he entered the basement of the Bramble Inn, he saw two large cardboard cartons identified by Boyd as containing desks belonging to Everett Waddey; and that he had previously seen one of the cartons in the garage at the defendant's home when he went there on December 5, 1977 to investigate an unrelated offense. He said the evidence technician who accompanied him took photographs of articles in the garage.

Manuel also testified that Lieutenant Wade and Detective Camden of his department went with him to the defendant's home on the night of January 31, 1978. The three officers talked with the defendant and his mother and father in the garage. After a few minutes of general conversation, Manuel said he advised the defendant of his constitutional rights in accordance with the requirements of *Miranda*.[2] He stated that he told the defendant the cartons containing the Everett Waddey office desks had been seen in defendant's garage and the defendant denied that they had been there. Manuel said he then told the defendant that he knew they had been in his garage because he had photographs of the cartons. Defendant then admitted that the desks had been in his garage and that he knew they were stolen property.

Lieutenant Wade testified that he was with Manuel on January 31 at defendant's home and heard Manuel advise the defendant of his constitutional rights pursuant to *Miranda*.

Detective Camden testified that he was also present on January 31 at the defendant's home with Manuel and Wade. He stated that Manuel gave defendant his *Miranda* warnings, and he heard Manuel ask the defendant about the cardboard boxes which had been seen in defendant's garage. Defendant first denied any knowledge of the cartons, but when Manuel told defendant that the

---

[2]*Miranda v. Arizona*, 384 U.S. 436 (1966).

Sheriff's Department had photographs of the cartons containing the desks, defendant stated that he knew they had been there and he knew they were stolen.

On the morning of February 1, 1978, arrangements were made for Manuel to meet with the defendant and his attorney, Claude Carter, for the purpose of talking about an unrelated offense that had previously occurred at defendant's home. Manuel arrived at Carter's office that afternoon a few minutes before the defendant and discussed with Carter his investigation of the unrelated offense and the present offense of receiving the stolen Everett Waddey desks. Shortly thereafter, defendant appeared and the three men engaged in general conversation. Manuel stated that he did not question defendant immediately because he did not know whether he should again advise him of his constitutional rights since his lawyer was present. When Manuel asked if he should again warn defendant, Carter stated that it was not necessary and defendant nodded in agreement. Manuel then said to the defendant, "Kenny, . . . you already told me you knew the things were stolen;" whereupon the defendant replied, "Yeah, I knew it, I knew they were stolen."

Charles B. Asey, a longtime friend of the defendant, testified that he was at defendant's home on September 20, 1977 when Jamie Phillips came to the home driving an Everett Waddey van. Shortly thereafter, he, Phillips, and the defendant went to a restaurant. There a discussion took place between the defendant and Phillips concerning a desk that defendant was buying from Phillips. Asey said they argued over the price, and finally Phillips agreed to take $70 for the desk because defendant kept stating that was the amount he had paid Phillips for a desk in a previous transaction. After leaving the restaurant, they all went back to defendant's home. He stated that Phillips took a "two-wheeler" out of the van, went around the back of defendant's garage where he had previously left the desk, and rolled it into the garage. Phillips placed the carton on a similar carton already there. He further stated that the desk was packaged in a cardboard box, and there were a "lot" of numbers on the side of the box. Asey identified the cartons as the ones shown in the photographs taken in the basement of the Bramble Inn. Asey also said that defendant asked him to try to find a buyer for the desk and that he wanted $300 for it.

Defendant's mother and father testified that they were present

when the officers came to their son's home on January 31. They both testified that defendant was not given the *Miranda* warnings.

Defendant did not take the stand at his trial. However, he did testify at the hearing on his motion to suppress his alleged statements.

At that hearing, defendant testified that he was not given his *Miranda* warnings. He also denied making the statements that the desks had been in his garage and he knew they were stolen property. Defendant's parents also corroborated his testimony that he was not given his *Miranda* warnings.

Attorney Carter, who did not represent defendant at his trial on May 15, 1979, testified at the suppression hearing that he had several conversations with the defendant before and after his arrest and it was difficult for him to differentiate what the defendant had told him on those occasions and what was said at the conference in his office. He did remember, however, that the subject of *Miranda* warnings was mentioned.

Officers Manuel, Wade and Camden testified that the defendant was warned of his *Miranda* rights on January 31. Manuel and Camden also stated that defendant admitted the desks had been in his garage and he knew they were stolen property.

At the conclusion of all the evidence at the suppression hearing, the trial judge stated that although defendant denied he was given his *Miranda* warnings and denied making the alleged statements the motion for suppression was denied because the three officers testified defendant was warned and he did make the statements. The trial judge further said that because defendant denied making the statements attributed to him a question of credibility was presented for the jury to consider along with all the other evidence.

In the course of the colloquy between the trial judge and defendant's counsel after the defendant announced that he had presented all his evidence, the trial judge said that since defendant denied making the statements to the police officers, there was nothing to suppress unless defendant would admit he made the statements.

Defendant argues that the trial judge did not rule that his statements were constitutionally admissible and that he submitted

the issue of voluntariness to the jury for its determination. We do not agree.

■ When the trial judge admits a confession into evidence, he does not vouch for its truth, but admits it for the jury's consideration along with all the other evidence. Its weight and sufficiency are questions for the jury. *McCoy* v. *Commonwealth,* 206 Va. 470, 473-75, 144 S.E.2d 303, 307-08 (1965); *Upshur* v. *Commonwealth,* 170 Va. 649, 655, 197 S.E. 435, 437 (1938).

In *Jackson* v. *Denno,* 378 U.S. 368 (1964), the Supreme Court of the United States said:

> "In jurisdictions following the orthodox rule, under which the judge himself solely and finally determines the voluntariness of the confession . . . the judge's conclusions are clearly evident from the record since he either admits the confession into evidence if it is voluntary or rejects it if involuntary. Moreover, his findings upon disputed issues of fact are expressly stated or may be ascertainable from the record."

*Id.* at 378, 379.

Applying this rule, we find the trial judge made the required ruling on the admissibility of the defendant's statements and the only question submitted to the jury was the weight to be accorded the statements.

The statement of the trial judge that there was nothing to suppress since defendant denied making the statements is an incorrect statement of the law because an accused does not have to admit that he made alleged incriminating statements before he has standing to contest their admissibility. *See Jones* v. *United States,* 362 U.S. 257 (1960); *Lee* v. *Mississippi,* 332 U.S. 742 (1948). However, in the present case the defendant was afforded a full and complete hearing on the sole allegation in his amended motion to suppress that he was not given the *Miranda* warnings. Defendant did not contend that even if he was given the *Miranda* warnings his statements were involuntary. Moreover, defendant, in his reply brief and in oral argument before us, conceded that the evidence adduced at the suppression hearing overwhelmingly established that defendant's *Miranda* rights were fully explained to him. The record shows that the trial judge found as a fact that the defen-

dant's *Miranda* warnings were properly given and that defendant's statements were voluntary. Thus, the denial of the motion to suppress was based upon a finding of fact which was supported by credible evidence. *Jackson* v. *Commonwealth*, 193 Va. 664, 673, 70 S.E.2d 322, 327 (1952).

■ The defendant contends that the evidence is insufficient to prove the corpus delicti and to sustain his conviction. To prove the corpus delicti and to establish the guilt of the defendant, the Commonwealth must show that: (1) goods of the value of more than $100 were previously stolen from Litton by some other person; (2) that the defendant aided in concealing them; (3) that at the time he so aided in concealing them he knew they had been stolen; and (4) that he so aided in concealing them with a dishonest intent. *Pasanello* v. *Commonwealth*, 206 Va. 640, 643-44, 145 S.E.2d 200, 203 (1965).

■ The corpus delicti may be established by circumstantial evidence as well as by direct evidence. *Cochran* v. *Commonwealth*, 122 Va. 801, 817, 94 S.E. 329, 333 (1917). A confession is competent evidence tending to prove the corpus delicti when the Commonwealth presents substantial corroborative circumstances such as will, when taken along with the confession, establish the corpus delicti beyond a reasonable doubt. *Wheeler* v. *Commonwealth*, 192 Va. 665, 670, 66 S.E.2d 605, 607 (1951). *Cochran* v. *Commonwealth*, *supra*.

Defendant argues that the Commonwealth did not prove that the desks were stolen; that they were the property of Litton; and that one of the desks found in the Bramble Inn basement had been in defendant's garage. We do not agree.

Boyd's evidence showed that the particular desks were received at Litton's Roanoke warehouse as indicated by the shipping labels, the company's batch sheets, and the markings on the cartons; that the company's records showed that the desks had not been sold; that no one had been authorized to remove the desks from the warehouse; and that Litton had not sold and delivered the desks to the defendant.

Asey's evidence showed that Phillips delivered a carton containing a desk to the defendant in an Everett Waddey van and placed it in defendant's garage on top of a similar carton. Defendant paid Phillips $70 for the desk and asked Asey to find someone to buy it for $300. Asey identified the cartons containing the desks from

photographs taken in the basement of the Bramble Inn as being the same ones that had been in defendant's garage.

Approximately three weeks before the cartons containing the desks were found in the Bramble Inn, the defendant borrowed a key from Davis for the purpose of storing some of his goods in the basement of the Inn. Defendant admitted on two separate occasions that the desks had been in his garage and that he knew they were stolen.

Defendant's reliance on *Maughs* v. *City of Charlottesville*, 181 Va. 117, 23 S.E.2d 784 (1943), in support of his argument is misplaced. There the evidence showed that Maughs had been seen on the C & O Railroad property and that he had in possession railroad tie plates similar to plates owned by the railroad. But since the city failed to establish the corpus delicti by proving that the plates had been stolen or belonged to the C & O Railroad, we reversed the conviction of larceny.

In the present case, the evidence established the corpus delicti and is sufficient to support the conviction.

■ Lastly, defendant contends that the trial court erred in refusing instructions F1 and G1. Instruction F1 would have told the jury that when the alleged owner thinks he had lost property but will not swear that he has, the ownership is not by this evidence sufficiently proved.

The instruction was properly refused for the reason that it is not supported by the evidence.

■ Instruction G1 reads as follows:

"You cannot charge a defendant with knowledge that the goods involved with this case were stolen from the fact that in obtaining the goods he may not have exercised ordinary care or that degree of care that a man of ordinary prudence would have exercised under the circumstances; nor from the fact that he may have obtained them at less than their true value; but to charge the defendant with guilty knowledge, the burden is upon the Commonwealth to prove by the evidence beyond a reasonable doubt that the defendant had knowledge that the goods were stolen at

the time they came into the possession of the defendant. And if the jury, after considering all of the evidence, entertain a reasonable doubt as to whether the defendant did know that the goods were stolen, then you must find the defendant not guilty."

This instruction is a combination of three instructions given on behalf of the defendant in *Reaves* v. *Commonwealth,* 192 Va. 443, 450, 65 S.E.2d 559, 563 (1951).

It was not error to refuse the instruction. The second clause which reads "nor from the fact that he may have obtained them at less than their true value" is not a proper statement of the law. Guilty knowledge is an essential element of the crime of receiving stolen goods and can be shown by the circumstances. The fact that the defendant paid a ridiculously low price for the desks is a circumstance to be considered by the jury. *See Longman* v. *Commonwealth,* 167 Va. 461, 466, 188 S.E. 144, 146 (1936). The other two clauses in the instruction were amply covered by other instructions.

For the reasons stated, the judgment of the court below is

*Affirmed.*