## Richmond

### RAY AUGUSTA STARKS

### v.

### COMMONWEALTH OF VIRGINIA

March 11, 1983.

Record No. 812099.

Present: Carrico, C.J., Cochran, Poff, Compton, Thompson,*
Stephenson, and Russell, JJ.

---

* Justice Thompson participated in the hearing and decision of this case prior to the effective date of his retirement on March 2, 1983.

*Thomas D. Logie (Thomas D. Logie, P.C.,* on briefs), for appellant.

*Robert Harris, Assistant Attorney General (Gerald L. Baliles, Attorney General,* on brief), for appellee.

COCHRAN, J., delivered the opinion of the Court.

Tried by the court without a jury, Ray Augusta Starks was convicted of receiving stolen property in violation of Code § 18.2-108 and sentenced to serve two years in the State penitentiary. On appeal, Starks raises questions as to the admissibility of certain evidence, the failure of the Commonwealth to provide immunity as allegedly promised, the sufficiency of the evidence, and the refusal of the trial court to grant a new trial based on after-acquired evidence.

Joyce Martin, a witness for the Commonwealth, testified that between 11:20 p.m. December 15 and 8:00 a.m. December 16,

1980, an unknown person broke into her house and stole a gold wedding ring set with diamonds. She identified the ring exhibited to her at trial as the one that had been stolen.

Sherry Carpenter, an employee of Da-Gold, a Front Royal store, testified that on December 17, two young black men, one of whom was Starks, entered and sold the ring for $50. Starks signed the sales paper as "Ray Starks" after identifying himself by his driver's license. Carpenter gave the money to Starks. Lawrence Goldsmith, the owner of the shop, corroborated her testimony that Starks sold the ring. Goldsmith testified that he customarily requires the seller to identify himself and sign the purchase order. He turned the ring over to the police.

Officer Roger Fox, of the Front Royal Police Department, investigated the burglary. He went to Starks's home on December 29 and gave him *Miranda* warnings before questioning him. Starks asked for immunity, but Fox told him that the Commonwealth's Attorney was the only person who could promise that. Fox thought he said something to Starks that "possibly he wouldn't be charged with this offense" if he helped the police get the burglar. According to Fox, Starks declined to give a written statement, but said that he had received the ring, which he recognized as the one he sold to Da-Gold, from "Punkin" Turner. Turner, a juvenile who had a reputation as a burglar, lived next door to Joyce Martin. Later in the day, Starks met Fox at the police station and, after receiving from the Commonwealth's Attorney a promise of immunity from prosecution if he cooperated, gave a written statement. This statement was conceded to be inadmissible.

At trial, Starks moved to suppress the oral statement. In support of the motion, he testified that he had not made an oral statement and that he had only given the written statement at the police station after receiving a promise of immunity. The trial court, however, after hearing the testimony of Fox and Starks, ruled that Fox had segregated the statements sufficiently to permit the oral statement to be admitted. The court also overruled Starks's motion to strike the Commonwealth's evidence.

Starks testified in his own defense that one Terry Diggs asked him to assist him in selling the ring, that Diggs repeatedly denied the ring was stolen, that Starks had received $5 from the sale proceeds, and that he had lied about Turner to protect Diggs.

Diggs, testifying as a defense witness, said that he found the ring in his yard at least two days before selling it to Da-Gold. He asked Starks to help sell the ring because Starks could properly identify himself. Diggs recalled that Starks had asked him several times if the ring was stolen and he had replied that it was not. Diggs said that he negotiated the sale of the ring and that Starks only showed his driver's license for identification purposes and signed the receipt evidencing the sale.

Several weeks after trial, Starks filed a motion to set aside the verdict on the basis of after-discovered evidence. Attached to the motion was an affidavit of Diggs dated August 14, 1981, that he had seen a person break into the Martin residence, that he knew the culprit, who was neither Starks nor Turner, that he later found the ring in his yard, that he asked Starks to help him sell the ring, and that he told Starks the ring was not stolen. Diggs, testifying at the hearing on the motion, denied knowing the identity of the person he saw break into the Martin house. The trial judge, stating that Diggs's testimony was a "transparent attempt to hoodwink" the fact finder, and that he did not put any credence in it, overruled the motion.

Starks argues that the trial court erred in admitting the oral statement that he received the ring from Turner. Starks says that the statement was not proved by a preponderance of the evidence; that a preponderance of the evidence showed that Fox promised Starks immunity before the oral statement, which Starks denied making, was given; that the court applied the wrong standard in ruling on the admissibility of the statement; and that the statement was merged into the inadmissible written statement as a matter of law.

In arguing the questions as to the preponderance of the evidence, Starks overlooks the distinction between the quantitative and qualitative weight of evidence. The credibility of witnesses was for the trial judge, sitting as the fact finder, to determine. The testimony of Officer Fox, construed most favorably to the Commonwealth, is sufficient to establish by a preponderance of the evidence that the oral statement was made by Starks and that it was made before there was any promise of immunity. Fox testified that he kept his notes about his conversation with Starks at the residence separate from his notes about their subsequent conversation at the police station. The trial judge stated that Fox had isolated the two conversations. Counsel for Starks then said Starks's

testimony would differ from Fox's testimony that there were two statements, to which the judge correctly replied that this would create an issue of fact. Starks did testify that he made no oral statement, but the court, accepting the testimony of Fox, denied the motion to exclude it.

Clearly, there was an issue of fact whether the oral statement was made and, if so, whether it was isolated from the written statement. The trial judge believed Fox's testimony that the oral statement was made, that it was made before Starks received any promise of immunity, and that it was separate and distinct from the conversation leading to the written statement.

 The oral statement was admissible if the Commonwealth proved by a preponderance of the evidence that it was made voluntarily. *Griggs* v. *Commonwealth,* 220 Va. 46, 49, 255 S.E.2d 475, 477 (1979). Starks says that the evidence shows as a matter of law that the statement, if given, was given involuntarily. However, the testimony of one credible witness may constitute a preponderance of the evidence, regardless of the number of unbelievable witnesses who contradict that testimony. Fox testified that he read Starks his *Miranda* warnings, that Starks understood them, and that Starks then volunteered that he had received the ring from Turner and had sold it to Da-Gold for $50. There is no evidence that the trial judge applied the wrong standard in ruling the oral statement admissible. We reject Starks's contention made in oral argument that the trial judge should have expressly stated that he based his finding that the oral statement was made voluntarily upon a preponderance of the evidence. Absent clear evidence to the contrary, we will presume that the trial judge applied the correct standard to the facts. *Yarborough* v. *Commonwealth,* 217 Va. 971, 978, 234 S.E.2d 286, 291 (1977).

 The Commonwealth had the burden of proving that 1) the ring had a value of more than $200 and was previously stolen by some other person, 2) Starks aided in concealing the ring, 3) he knew the ring was stolen when he aided in concealing it, and 4) he aided in concealing it with a dishonest intent. *See Wilson* v. *Commonwealth,* 220 Va. 26, 33, 255 S.E.2d 464, 468 (1979). Starks says that the evidence was insufficient to sustain his conviction. He concedes that the value of the ring exceeds $200 and that it was stolen by some other person, but he insists that the evidence is insufficient to show that he ever possessed the ring with knowledge that it was stolen. We disagree.

There was evidence that Starks was in control of the ring when it was sold for $50. The sale was made in his name, as shown on the receipt signed by him, and the purchase price was paid to him. There was evidence presented by the Commonwealth that Starks had admitted obtaining the ring from "Punkin" Turner, a juvenile whose reputation as a thief was known to Starks. This was sufficient to establish a prima facie case.

When, at the conclusion of the Commonwealth's evidence, the trial court overruled Starks's motion to strike the evidence, Starks waived his motion by adducing evidence on his own behalf. In view of this waiver, the sufficiency of the evidence is to be determined from the entire record. *Hargraves* v. *Commonwealth*, 219 Va. 604, 605, 248 S.E.2d 814, 815 (1978). This evidence purported to show that Starks merely assisted his employee, Diggs, sell a ring which Diggs had found in his yard. The trial judge could reject this evidence totally or in part after reviewing the entire record and evaluating the credibility of Starks and Diggs. He could find beyond a reasonable doubt from the circumstantial evidence that Starks had received the ring from either Turner or Diggs and knew it to be stolen.

Starks says that the trial judge found Starks knew "or should have known" the ring was stolen. It is true that the judge used this phraseology in ruling on the motion to strike at the conclusion of the Commonwealth's evidence, but he promptly explained, upon Starks's objection, that he incorrectly said "or should have known," a negligence standard insufficient in a criminal case, and that he meant that the evidence was sufficient to permit the inference that Starks "had to know" the ring was stolen. At the conclusion of all the evidence, the trial judge stated that he found beyond a reasonable doubt that Starks was guilty as charged regardless of whether he received the ring from Turner or Diggs. We hold that there is credible evidence to support this finding.

Starks next contends that he was entitled to immunity from prosecution because he fulfilled his part of the bargain by cooperating with the police. He says that the trial judge believed the oral statement attributed to him by Fox that the ring was received from Turner, so he told the truth in the statement and thus cooperated with the police. A motion in bar of prosecution should be made prior to trial. Rule 3A:12. Nevertheless, assuming that in this case the motion could not be made until the evidence revealed whether Starks had cooperated, it should have been made at the

conclusion of the Commonwealth's evidence, when Starks's motion to strike was overruled because the oral statement and other evidence were deemed sufficient to make out a prima facie case. Rule 5:21. Moreover, there is no merit in Starks's position. In testifying in support of his motion to exclude the oral statement, Starks denied having made the statement. Either his oral statement to the police or his testimony denying that he made the statement and relating the circumstances under which he acquired the ring was untrue. The trial judge did not find him guilty only on the theory that he obtained the ring from Turner. Without attempting to determine which of Starks's explanations was correct, the judge found him guilty regardless of the identity of the person from whom he received the stolen property. Indeed, tested by the entire record, the reliability of both versions is questionable and Starks is not entitled to immunity predicated upon truthful disclosure of information to the law enforcement authorities.

We reject Starks's argument that the trial court erred in not granting him a new trial on the basis of after-discovered evidence. When Starks filed an affidavit of Diggs admitting, contrary to his testimony at trial, that he observed the break-in of the Martin residence and knew the burglar, the trial judge conducted a hearing on the motion for a new trial. Diggs then testified that he observed the break-in but, contrary to his statement in his affidavit, he denied knowing the identity of the burglar. He repeated his trial testimony that he found the ring in his yard and that he did not know it was stolen.

In *Reiber v. Duncan,* 206 Va. 657, 145 S.E.2d 157 (1965), we reaffirmed the principles governing the disposition of motions for new trials on the ground of after-discovered evidence. Such motions are addressed to the sound discretion of the trial judge and are granted with reluctance upon a showing that (1) the evidence was discovered after trial, (2) counsel in the exercise of reasonable diligence could not have discovered it for use at trial, (3) the evidence is not merely cumulative, corroborative, or collateral, and (4) the evidence is material so that on another trial it should produce an opposite result. *Id.* at 663, 145 S.E.2d at 162. *See Odum v. Commonwealth,* 225 Va. 123, 130, 301 S.E.2d 145, 149 (1983) (this day decided).

All that Diggs's post-trial testimony accomplished was to confirm the trial judge's earlier evaluation of him as a thoroughly untrustworthy witness. At the conclusion of the hearing, the judge

stated that, regardless of which explanation for Starks's possession of the ring was correct, he found Starks guilty beyond a reasonable doubt. He found that Diggs and Starks were "completely involved," whether the burglary was committed by "Punkin" Turner or someone else.

Even if Diggs's post-trial testimony had been credible, the only portion of it that differed from his trial testimony merely related to a collateral issue: he admitted having seen the burglar enter the victim's dwelling. The rest of his post-trial testimony was cumulative: he continued to deny knowing that the ring was stolen, and he continued to assert that he told Starks the ring was not stolen. Clearly this testimony should not have produced a different result in another trial.

We hold that Starks has failed to show any abuse of discretion by the trial judge in denying his motion for a new trial.

For the reasons assigned, we will affirm the judgment of the trial court.

*Affirmed.*