**CIRCUIT COURT OF CLARKE COUNTY**

Commonwealth of Virginia

v.

John U. Miller, III

January 21, 1988

Case No. Cr. 2778

By JUDGE ROBERT K. WOLTZ

The issue is the suppression of certain statements made by the defendant at the Winchester Police Department shortly after his arrest on the indictment in this case charging conspiracy to distribute cocaine. Defendant filed motion for suppression and evidence consisting of the testimony of two police officers and the defendant was heard previously.

The evidence is now summarized briefly. Investigator Roper of the Clarke County Sheriff's Department approached the defendant a few months before his arrest. The police had reason to believe he was involved in drug trafficking and the defendant had made some incriminating statements to an undercover officer. Through Roper the defendant learned that the police had knowledge of certain of his activities. Roper proposed to him that he cooperate in various ways with the police with a view to his escaping prosecution. Apparently the defendant did or attempted to some extent to cooperate but not sufficiently or speedily enough to satisfy the police. The defendant was told on several occasions over a period of time that his cooperation would bring him definite benefits regarding prosecution. Eventually the defendant was indicted for conspiracy and the investigator and Deputy Tennent of the Warren County

Sheriff's Department, both of whom were part of a regional drug task force, arrested the defendant near his home pursuant to a capias.

He was transported to the Winchester Police Department, a trip of fifteen to thirty minutes, to be brought before a magistrate. During the trip he was read his *Miranda* rights and some suggestion was made that he cooperate in the investigation. At the police department he was processed as an arrestee and taken to a room where he was again read his *Miranda* rights. He acted in a cooperative manner and was "in a good frame of mind." He was seriously encouraged to cooperate both as to giving a statement and in the overall investigation, representations being made to him that if he did so Roper could probably arrange for his release on recognizance, the defendant being very anxious not to be incarcerated.

Roper told him generally if he cooperated in the investigation and particularly if he gave a statement there was a possibility that the pending charge would be nol prossed, that if he gave specific information on his own involvement and implicated others that the officers would see the Commonwealth Attorney in his behalf for the purpose of the case being nol prossed or leniency shown toward him or other benefit to him. Though the defendant testified he was guaranteed by Roper as to these matters, the officers' testimony was that the defendant at no time was given any guarantees, only that if the cooperated the Commonwealth would be prevailed upon respecting the prosecution but the final decision would be up to the prosecutor.

A few preliminary considerations need to be mentioned. First, the interrogation was custodial but the directives of *Miranda v. Arizona*, 384 U.S. 436 (1966), do not come into play as the rights required by that holding to be given before initiation of custodial interrogation clearly were given and understood by the defendant. Therefore, second, the admissibility of the defendant's statement is to be judged on the more traditional common law basis of actual voluntariness on the part of the declarant. Numerous decisions in this jurisdiction exemplify that principle, e.g., *Shifflett v. Commonwealth*, 55 Va. (14 Gratt.) 652 (1858); *Jackson v. Commonwealth*, 116 Va. 1015 (1914); *Campbell v. Commonwealth*, 194 Va. 875 (1953);

*Griggs v. Commonwealth*, 220 Va. 47 (1979). In more modern jurisprudence, the question is not always one solely of common law, but there are overtones of constitutional considerations. *See Wilson v. Commonwealth*, 220 Va. 26 (1979).

Third, the cases cited above and others setting forth the common law principle on admission of confessions or statements of a defendant with respect to voluntariness also established the principle that the burden of proof is on the prosecution to show that a confession or statement was voluntarily made. Constitutionally that burden is by a preponderance of the evidence, not beyond a reasonable doubt. *Lego v. Twomey*, 404 U.S. 477 (1972).

Though the exclusion of a confession is at least partly based on the concept of fundamental fairness, *see* Blackstone's maxim, *Nemo tenebatur prodere seipsum* (No one shall be bound to betray himself), at 4 Commentaries on the Laws of England 293, principally the rule of exclusion at common law is an evidentiary rule. This rule is based broadly on the concept of excluding untrustworthy evidence; if the statement is trustworthy it is admissible, if not it is inadmissible. Though stated different ways in different cases essentially the first case on the subject in Virginia, *Smith v. Commonwealth*, 51 Va. (10 Gratt.) 734, 738 (1853), states the principle thus:

> It is therefore declared as the condition of the admissibility of a confession, that it be free and voluntary, and not made under the influence of such bias upon the mind of the party as will in the judgment of the law, disturb the free exercise of volition, and destroy the presumption that the confession so made is true . . .

At page 739 the same case sets forth a specific rule, also stated in different terminology in later cases, as follows:

> The rule that may be fairly deduced from authoritative decisions upon the subject is, that a confession may be given in evidence unless it appear that it was obtained from

the party by some inducement of a worldly or temporal character in the nature of a threat, or promise of benefit, held out to him in respect of his escape from the consequences of the offense or the mitigation of the punishment, by a person in authority, or with the apparent sanction of such person.

In the present case, obviously the officers were persons in authority as contemplated by this rule. No attempt has been made to detail all of the evidence given, but I conclude from it the officers did not make any absolute guarantee that if the defendant cooperated and gave a statement he would be released that day without incarceration or that the charge would be nol prossed or other leniency or benefits be shown to him. Nevertheless given the previous occasions during the months preceding arrest when advantage to him was offered in return for his cooperation, and the request for cooperation on that day accompanied by representations benefits to him were entirely possible, along with very strong intimations that the officer could obtain favorable action by both the magistrate (releasing on recognizance) and the prosecutor (nol prossed or very light sentence), I conclude that the Commonwealth has not carried the burden of showing the statement was voluntary. The Commonwealth has not dispelled strong inferences that the statement was obtained by influences on the mind of the defendant as would "disturb the free exercise of volition."

So much emphasis in police technique and in litigation has been placed upon the *Miranda* case that the more ancient by at least two to three centuries rule of exclusion on the basis of actual voluntariness may be neglected. Under present day law custodial statements or confessions at the initiative of the police must comply both with *Miranda* and with the common law evidentiary rule stated above.

Note also that the latter rule in contemplation of the United States Supreme Court has evolved from one solely evidentiary, *Hopt v. Utah*, 110 U.S. 574 (1884), through a time of ambivalence whether the rule was evidentiary merely or constitutional, *see United States v. Carignan*, 342 U.S. 36 (1951), to *Malloy v. Hogan*, 378 U.S. 1 (1964), establishing it in state as well as federal prosecu-

tions as a constitutional standard under the privilege against self-incrimination provisions of the Fifth Amendment. *Compare*, *Enoch v. Commonwealth*, 141 Va. 411 (1925), applying almost forty years before *Malloy*, though citing *Brom v. United States*, 168 U.S. 532 (1897), the similar privilege against self-incrimination contained in the Virginia Bill of Rights. In certain constitutional areas at least perhaps Blackstone is alive and well.