# COURT OF APPEALS.

## June 6, 1919.

## THE PEOPLE ex rel. ELIZABETH B. BRIGGS v. JOHN J. HANLEY.

### (226 N. Y. 453.)

(1.) HABEAS CORPUS—WHEN RELATOR PROPERLY HELD FOR GRAND JURY FOR CRIME OF RECEIVING STOLEN PROPERTY.*

Where money is obtained from another by fraud and felony, the wrongdoer obtains no title and the owner may reclaim it if found in the possession of the wrongdoer, or he may follow it into the hands of any person who received it without consideration, or with notice of the fraud by which the same was obtained; and if such money be deposited in a bank, it still remains the money of the owner, the bank being a mere depository, and while it so remains the owner can compel the bank to restore it to him.

(2.) SAME.

Where a clerk of a trust company in New York city fraudulently obtained possession of and forged the necessary signatures to certain certificates of stock of a corporation and by putting up the forged certificates as security for the payment of his promissory notes obtained a large loan from a firm of bankers in another state who telegraphed their correspondents in New York to place the amount of such loan to the credit of said clerk in a designated trust company, this credit, as between the clerk and the foreign bankers, belonged to the latter. It was stolen credit, and money drawn by the clerk from the trust company by reason thereof was stolen money. The money belonged not to the clerk but to the bankers who could have retaken the same from him or any other person who took the same with notice.

(3.) SAME.

Where, therefore, the clerk afterward drew from the trust company a part of said deposit and gave it to relator, his paramour, whom he had told about the transaction and how he had obtained the credit in the trust company and the money, he committed a larceny within the

---

* See notes, Vol. 12, p. 48; Vol. 24, p. 49.

meaning of the statute (Penal Law, § 1308) and when the relator accepted part of this money, knowing, as she did, that it had been stolen, she was guilty of receiving stolen property and the magistrate, before whom she was arraigned after her arrest upon the charge of criminally receiving stolen property, did not err in committing her to await the action of the grand jury.

*People ex rel. Briggs* v. *Hanley*, 185 App. Div. 667, reversed.

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered January 10, 1919, which affirmed an order of Special Term sustaining a writ of habeas corpus and discharging the relator from custody.

The facts, so far as material, are stated in the opinion.

*Edward Swann, District Attorney (Robert C. Taylor,* of counsel), for appellant. The relator Briggs was improperly discharged. (People v. Dumar, 106 N. Y. 503; People v. Gottschalk, 66 Hun, 64; 137 N. Y. 569; People v. Miller, 169 N. Y. 339; People v. Civille, 44 Hun, 497; People v. Shears, 158 App. Div. 577; People v. Sherman, 133 N. Y. 349; People v. Martin, 175 N. Y. 315; People v. Abeel, 182 N. Y. 415.)

*David J. Wagner,* for respondent.

No evidence was offered to support the crime alleged to have been committed by relator. (People v. Walker, 198 N. Y. 329; People v. Hartwell, 166 N. Y. 361; People v. Ammon, 92 App. Div. 205; 179 N. Y. 540; Bishop on Statutory Crimes, §§ 193, 194, 227.) The money given relator was not money stolen from Chandler Bros. or from Brown, but was a substitute four times removed. There is no law making it a crime for the relator to have in her possession the substitute or eventual proceeds of stolen property. (People v. Jaffe, 185 N. Y. 497; Newton v. Porter, 69 N. Y. 133; People v. Fowler, 152 N. Y.

Supp. 672; Barton v. United States, 196 U. S. 283; Cragie v. Hadley, 99 N. Y. 131; Lyons v. Union Exchange Nat. Bank, 150 App. Div. 493; People v. St. Nicholas Bank, 77 Hun, 159; Commercial Bank of Albany v. Hughes, 17 Wend. 94; Met. Nat. Bank v. Lloyd, 90 N. Y. 530; Comm. v. Wood, 142 Mass. 459; State v. Schaffer, 89 Mo. 271; People v. Geyer, 196 N. Y. 364.)

McLaughlin, J.:

On the 24th of July, 1917, upon a charge of criminally receiving stolen property, the relator was committed by a magistrate of the city of New York to the city prison to answer to the Court of Special Sessions. She procured a writ of habeas corpus and after a hearing thereon an order was made sustaining the writ and discharging her from custody. On appeal to the Appellate Division the order was affirmed, one of the justices dissenting, and the People now appeal to this court.

The facts upon which the warrant was issued for the arrest of the relator, and upon which she was held to await the action of the grand jury, were not controverted upon the hearing which resulted in her discharge in the habeas corpus proceeding. The question presented on this appeal, therefore, is whether, upon such facts, the magistrate erred in committing the relator.

The determination of this question necessitates a statement of the facts involved in or immediately connected with relator's arrest, commitment and discharge. In this connection it appeared that in October and November, 1913, one Foye, who was a clerk employed in the transfer department of a trust company in the city of New York, fraudulently obtained possession of and forged the necessary signatures to certain certificates of stock of a corporation, by means of which he obtained from Charles T. Brown & Co., of Philadelphia, three loans aggregating one hundred thousand dollars. The transaction

which resulted in the loans was by correspondence, Foye giving his promissory notes and putting up the forged certificates of stock as collateral security for their payment. Charles T. Brown & Co., upon receipt of the notes and certificates of stock, paid to certain banks or trust companies in Philadelphia the amounts called for, and they in turn telegraphed their correspondents in New York to place such amounts in the Knickerbocker Trust Company of New York to the credit of Foye, which they did by means of checks payable through the clearing house. When the transaction was completed, Foye thus had to his credit in the Knickerbocker Trust Company, by reason of the fraud practiced upon Brown & Co., $100,000, less commissions and interest, and this is all the credit he had. No other moneys were ever paid to the trust company or mingled with the credit thus given. Sometime prior to Foye's obtaining this credit he had formed an acquaintance with the relator, which had ripened into relations which it is unnecessary to state, it being sufficient to say that he had told her how he could "steal" from ten to one hundred thousand dollars, but to do so might result in his being sent to prison. She urged him to do it and when he had obtained the loan of the first $10,000, he informed her. She congratulated him on his success and suggested that they elope to California. This he declined to do until he had gotten "some more of this easy money." He told her he expected to get in the neighborhood of a quarter of a million dollars, and where and how easy it would be to get it. After he had obtained the loans of $100,000, he told her he had given his wife $20,000 to protect her in case he were arrested, and she thereupon suggested that he also give her $20,000 to protect her in case of his arrest. Thereupon he agreed to give her $20,000 to open a bank account and later to invest in stocks and a further sum of $1,000 for expenses and clothing for her use on their prospective trip to California. Having obtained the credit in the trust company in the manner

37

indicated, for nearly $100,000, he drew a check, payable to his own order, on the trust company for $25,000, which amount was paid to him. He then telephoned the relator, they met at a restaurant, and he told her he had drawn out $25,000 of the "easy money,"— $21,000 of which he had in an evelope in his pocket for her. After having lunch they entered a taxicab for the purpose of going to the Astor Trust Company, where she was to deposit the money under the name of Elizabeth B. Austin. On the way to the trust company she asked to see the money. He took it out of the envelope, showed it to her, counted it, and then gave it to her, telling her how to deposit it, and after doing so to meet him at a place designated. She entered the trust company, made the deposit as directed, subsequently met him at the time and place agreed upon and exhibited to him the passbook of the trust company with the $21,000 credited thereon. Shortly thereafter Foye was arrested on a warrant issued in the commonwealth of Pennsylvania, extradited to that State and convicted of fraudulently making a written instrument, for which he was sentenced to a term of from five to ten years in the State penitentiary.

The facts presented before the magistrate clearly and unmistakably demonstrated that the relator knew when Foye gave her the $21,000 mentioned that it was a part of his credit in the trust company, obtained through his fraud upon Brown & Co. Did the relator's receiving this money, with such knowledge, constitute receiving stolen property within the meaning of the statute? I have no doubt it did. The statute (Penal Law, section 1308) provides that: "A person, who buys or receives any stolen property, or any property which has been wrongfully appropriated in such a manner as to constitute larceny according to this article, knowing the same to have been stolen or so dealt with, or who corruptly, for any money, property, reward or promise or agreement for the same, conceals, withholds or aids in concealing or withholding any property,

knowing the same to have been stolen, or appropriated wrongfully in such a manner as to constitute larceny under the provisions of this article, if such misappropriation has been committed within the state, whether such property were so stolen or misappropriated within or without the state  *   *   *   is guilty of criminally receiving such property * * *."

Her act in receiving the money and appropriating it to her own use brought her fairly within the meaning of the statute. In criminal, as well as civil cases, the law looks to substance and not to form.  Thus, it has been held in civil cases that whiskey made from corn wrongfully and unlawfully taken from the owner may be seized by him (Silsbury v. McCoon, 3 N. Y. 379); that the owner of negotiable securities stolen and afterwards sold by the thief, may follow and claim the proceeds in the hands of the felonious taker, or his assignee with notice (Newton v. Porter, 69 N. Y. 133); that where money is obtained from another by fraud and felony, the wrongdoer obtains no title and the owner may reclaim it if found in the possession of the wrongdoer, or he may follow it into the hands of any person who received it without consideration, or with notice of the fraud by which the same was obtained; that if such money be deposited in a bank, it still remains the money of the owner, the bank being a mere depository, and while it so remains the owner can compel the bank to restore it to him.  (Stephens v. Board of Education, 79 N. Y. 183; Tradesman's Bank v. Merritt, 1 Paige, 302; Mechanics Bank v. Levy, 3 id. 606; Pennell v. Deffell, 4 De Gex, M. & G. 372.)

In the present case, when the facts are stripped of legal fiction as to the identity of money, the transaction amounted to this: Foye, by means of a felonious act practiced upon Brown & Co., obtained a credit in the Knickerbocker Trust Company.  This credit, however, as between him and Brown & Co. belonged to the latter.  It was a stolen credit and money drawn from the trust company by reason of it was stolen money.  (People v.

Lammerts, 164 N. Y. 137, 15 N. Y. Crim. 158; People v. Dimick, 107 N. Y. 13, 5 N. Y. Crim. 185.) The money, in fact, belonged not to him, but to Brown & Co. (Rothchild v. Mack, 115 N. Y. 1), who could have retaken the same from him or any other person who took the same with notice.

When Foye drew $25,000 from the trust company he committed a larceny. When the relator accepted $21,000 of the same money, knowing it had been stolen, she was guilty of receiving stolen property and the magistrate did not err in committing her to await the action of the grand jury.

The orders of the Appellate Division and Special Term should, therefore, be reversed, the writ of habeas corpus dismissed, and the relator remanded to the custody of the defendant.

CHASE, COLLIN, CUDDEBACK, HOGAN and CRANE, JJ., concur; HISCOCK, Ch. J., not voting.

Ordered accordingly.