OPINION OF THE COURT
Peter J. Benitez, J.
Defendants are charged in an indictment with grand larceny in the second degree and criminal possession of stolen property in the second degree. Defendants (husband and wife) are charged with having stolen money in excess of $50,000 from Veronica and Edgar Davies (husband and wife) and with possession of those stolen monies. Defendants have moved in omnibus motions for the court to inspect the Grand Jury minutes and to dismiss the indictment. Their motions are decided as follows.
Legal Sufficiency of the Grand Jury Evidence
Defendants’ motions to inspect the Grand Jury minutes to determine legal sufficiency of the evidence submitted to the Grand Jury are granted to the extent that the court has examined the Grand Jury presentation and will address defendants’ challenges to the indictment. Defendants’ motions for release of the Grand Jury minutes to them are denied. Additionally, having examined the minutes, the court finds that the instructions given to the Grand Jury and the procedures employed in the Grand Jury presentation were proper.
The evidence presented to the Grand Jury establishes that from November 1994 through the end of January 1995, defendant Gbohou/Johnson worked in the home of Veronica and Edgar Davies as a home health aide four days a week for four hours a day at $5 an hour. She somehow reinserted herself into the Davies’ home in 1997. Beginning in late 1997 she began to systematically take money from various bank accounts of both Veronica and Edgar Davies. The People charge these takings as theft. Defendant Gbohou/Johnson contends that the Davies “consented to any transfers made to her.” (Defendant’s motion, at 1.) Additionally, defendant argues that the People’s case, as counsel perceives it from various bail arguments, is premised on a flawed legal theory, i.e., the theft of monies from a joint bank account in which defendant Gbohou/Johnson was one of the signatories/owners.
*326 The court will address the legal sufficiency of the charge of larceny as to defendant Gbohou/Johnson first, as that charge materially affects the charge of larceny as to defendant Calloway Johnson and the charge of criminal possession of stolen property as to both defendants. Defendant in part correctly states the law of this State. One cannot commit larceny of funds from a joint bank account in which he/she is one of the lawful account owners. (See, People v Antilla, 77 NY2d 853 [1991] .) The statutory development and basis for this principle was explained in detail in People v Zinke (76 NY2d 8 [1990]). Briefly stated, New York statutory law requires that property be wrongfully taken or obtained from an “owner” in order to constitute larceny. (Penal Law § 155.05 [1].) “Owner” is defined as one “who has a right to possession [of the property taken or obtained] superior to that of the taker, obtainer or withholder.” (Penal Law § 155.00 [5].) Furthermore, “[a] joint or common owner of property shall not be deemed to have a right of possession thereto superior to that of any other joint or common owner thereof.” (Penal Law § 155.00 [5].)
However, the viability of the larceny charge in this case does not rest on the use or transfer of funds from a joint bank account in which defendant Gbohou/Johnson was an owner. Rather, the evidence before the Grand Jury was that defendant Gbohou/Johnson took or obtained monies from individual accounts of both Veronica and Edgar Davies and, additionally, that she caused monies to be transferred from such individual accounts to one or more joint accounts in the names of Veronica Davies and herself. While there is further evidence that defendant Gbohou/Johnson withdrew monies from the joint accounts for her and her family’s own use and for wire transfers to defendant Calloway Johnson and others, under New York law such use of the monies from the joint account cannot constitute a larceny. Rather, with respect to the transactions involving that joint account, it is not the defendant Gbohou/Johnson’s withdrawals from it for which liability for larceny attaches, but the alleged larcenous creation of the joint account which is criminally actionable. (See, People v Antilla, supra, at 855.)
Therefore, whether the monies taken and/or obtained by defendant Gbohou/Johnson from the individual accounts of Veronica and Edgar Davies and the additional monies transferred from those individual accounts to a joint account in which defendant was an owner constitute larceny, turns upon whether those transactions were “wrongful” under the larceny statute. (See, Penal Law § 155.05 [1] [defining larceny].) In *327 New York, in order for conduct to constitute a wrongful taking or obtaining and, therefore, larceny, the property must be taken or obtained by one or more of the means set forth in Penal Law § 155.05 (2). That statutory listing which defines the means by which larceny can be committed has been held to be limiting, in that, if the property is not taken or obtained in one of the ways specified in the statute, it cannot constitute a larceny. (See, People v Foster, 73 NY2d 596 [1989].)
In this case, the evidence before the Grand Jury established that, during the period of the charged crime, both Veronica and Edgar Davies had deteriorated mentally. In sum, neither was mentally capable of understanding financial transactions and neither had the mental capacity to make an informed decision to give their money to defendant Gbohou/Johnson or to consent that it be taken by her. The evidence further establishes that defendant Gbohou/Johnson was clearly aware of Veronica and Edgar Davies’ diminished mental capacity. Defendant cites People v Antilla (supra) for the proposition that the only basis for a larceny charge involving the alleged wrongful creation of a joint account is where the account is created based on false pretenses or promises. Defendant incorrectly reads the case. In that case the People’s theory, sustained on appeal, was that the joint account was wrongfully created and money thereby obtained by false promise. However, the court did not state that such means were the only means by which a joint account could be wrongfully created. Rather, as stated above, larceny, even by wrongful creation of a joint account, may be committed by any means set forth in Penal Law § 155.05 (2).
If property is taken or obtained from a person who is mentally unable to consent to the transfer, the taking or obtaining constitutes a trespassory taking, a form of larceny actionable under Penal Law § 155.05 (2). (See, People v Camiola, 225 AD2d 380 [1st Dept 1996], and the cases cited therein at 381; see also, Deranger v State, 652 So 2d 400 [Fla Dist Ct App, 2d Dist 1995]; Starling v State, 677 So 2d 4 [Fla Dist Ct App, 5th Dist 1996]; Gainer v State, 553 So 2d 673 [Ala Crim App 1989], which recognize this form of taking or obtaining as larceny under their analogous statutes.) As acknowledged in People v Camiola (supra, at 381), the victim’s lack of ability to consent standing alone is insufficient to constitute a wrongful taking. Rather, the victim must have been unable to consent and the defendant must have been cognizant of the victim’s diminished capacity for the taking or obtaining to constitute a larceny.
*328 Here, there is ample evidence that, during the period of the charged thefts, both Veronica and Edgar Davies were mentally incapable of consenting to the transfers of the money to defendant Gbohou/Johnson and she was well aware of their diminished capacity. Accordingly, as to defendant Gbohou/ Johnson, the indictment is based on legally sufficient evidence before the Grand Jury both as to the larceny and criminal possession of stolen property counts.
It should be noted that, as already stated, the monies were taken through numerous transfers from the individual accounts of Veronica and Edgar Davies. Additionally, the various thefts are aggregated in a single count of grand larceny and a single count of criminal possession of stolen property to reach the threshold for the degree of those crimes charged. New York, as do many other States, permits aggregation of separate acts of wrongful taking or obtaining of property “[as] long as the larceny is held to be pursuant to a single intent, and one complete, illegal scheme, [and] it matters not the length of the period over which the takings continued.” (People v Cox, 286 NY 137, 142 [1941].) While that doctrine most often is used to aggregate separate larcenies from the same victim, it is the view of this court that the principles underlying it also permit the aggregation of larcenies from different victims under certain limited circumstances.
The core of the doctrine of aggregation is whether the “successive takings [were] pursuant to a single, sustained criminal impulse and in execution of a general fraudulent scheme.” (People v Rohey, 84 Misc 2d 662, 663 [Tompkins County Ct 1976]; accord, People v Columbia Research Corp., 103 Cal App 3d Supp 33, 163 Cal Rptr 455 [1980].) While the courts in People v Rohey (supra) and People v Columbia Research Corp. (supra) permitted aggregation of larcenies from separate victims simply on the showing of a single fraudulent scheme, appellate authority in this State suggests that more is required. In People v Perlstein (97 AD2d 482, 484 [2d Dept 1983]), the Court recognized that there was authority for aggregating thefts from different victims where the larcenies occurred at the same time and place. Yet, in that case the Court refused to extend the aggregation doctrine of People v Cox (supra) to larcenies from different victims as the thefts occurred at different times and the victims were associated only in that they were all purchasers of tickets from defendant for three charter flights.
Therefore, while no appellate court has set forth a standard for determining when larcenies from different victims may be *329 aggregated, no decision has held that such aggregation is never permitted. This court’s view is that the principles underlying the aggregation doctrine of People v Cox (supra) permit aggregation where the larcenies from different victims do not occur at a single place and time where the separate victims are sufficiently related to each other and to the properties taken as to be considered, in the eyes of the law, a single victim.
People v Perlstein (supra) is distinguishable from this case. Here, the victims, Veronica and Edgar Davies, were husband and wife. Additionally, each of them had bank accounts at the same bank held “in trust for” the other, from which defendant Gbohou/Johnson made transfers. (See, EPTL art 7, part 5, defining “in trust for” accounts [Totten trusts].) The evidence presented to the Grand Jury supports the conclusion that defendant Gbohou/Johnson’s larcenies from those accounts were pursuant to a single larcenous scheme to steal the life savings of the couple while holding herself out as caring for them. Her actions constituted a single, sustained criminal impulse carried out through a pattern of financial transactions, the sole objective of which was self-enrichment. Under those specific facts, the larcenies from the accounts of the two victims here are properly aggregated in a single count of grand larceny. The evidence before the Grand Jury was, therefore, legally sufficient to support the charges of both grand larceny in the second degree and criminal possession of stolen property in the second degree against defendant Gbohou/Johnson and her motion to dismiss is denied.
The People contend that the Grand Jury evidence is legally sufficient to charge defendant Calloway Johnson with both grand larceny and criminal possession of stolen property under the theory of “acting in concert.” (People’s affirmation in opposition, at 1 [portion of opinion concerning that issue has been deleted by the court for purposes of publication].) The Grand Jury evidence supporting the inference that defendant Calloway was an accessory to his codefendant’s larcenies also provides a basis for holding him accountable, as an accessory, to the possession of the stolen property, the funds of the Davies. That possession of the stolen funds continued even as the funds were transferred from one account to another and indeed, even from one bank to another by check, wire transfer or other means. Where money or the right to money (such as credit or a check) is the subject of the theft, other forms into which that money or the right to the money is converted, such as checks, wire transfers, or transfers into others’ financial accounts, *330 retain their character as stolen property. (See, People ex rel. Briggs v Hanley, 226 NY 453 [1919] [money from fraudulently obtained loans]; see also, United States v Walker, 176 F2d 564, 566 [2d Cir 1949] [travelers’ checks purchased with stolen mortgage proceeds]; United States v Pomponio, 558 F2d 1172 [4th Cir 1977] [checks issued based on fraudulently obtained credit]; State v Key, 118 Ariz 196, 575 P2d 826 [1978] [check drawn on account into which stolen check deposited], citing People ex rel. Briggs v Hanley, supra, and United States v Walker, supra.) Defendant Calloway Johnson’s motion to dismiss is, therefore, denied.
There appears to be some view that the charge of criminal possession of stolen property as to each defendant is based on the theory that the merchandise purchased with monies that had been stolen in itself constitutes stolen property. The general principle is that stolen money does not lose its character as stolen property when it is converted into other forms of property. Justice Learned Hand, in an often-quoted passage, wrote:
“We are by no means prepared to hold that, whenever any one fraudulently obtains the property of another, the proceeds are not also Taken feloniously by fraud’, into whatever form he [or she] may convert them. That is the view of equity, and it is impossible to find any reason in the purpose of the statute to distinguish between the original property and its substitute.” (United States v Walker, supra, at 566.)
In People ex rel. Briggs v Hanley (supra, at 458), the Court stated that, “[i]n criminal, as well as civil cases, the law looks to substance and not to form,” to determine if property which is the proceeds of theft is stolen property. Accordingly, stated the Court, “whiskey made from corn wrongfully and unlawfully taken from the owner may be seized by him.” (Id.) Yet, all these cited authorities involve some similarity in nature between the property stolen and the property possessed. This court has found no authority for the proposition that the possessor of merchandise purchased by another with stolen money is him/herself in possession of stolen property even if the possessor knows that the purchasing funds have been stolen. Accordingly, in this court’s view of the law, neither defendant’s possession of the household furnishings, vehicle, or other *331 merchandise purchased with money alleged to have been stolen from the Davies constitutes possession of stolen property.
[Portions of opinion omitted for purposes of publication.]