In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 05-2266

MOHAMMAD ABU HASHISH,

*Petitioner*,

*v.*

ALBERTO R. GONZALES,

*Respondent*.

_____

Petition for Review of an Order
of the Board of Immigration Appeals.
No. A77-651-325

_____

ARGUED JANUARY 13, 2006—DECIDED MARCH 24, 2006

_____

Before RIPPLE, KANNE and ROVNER, *Circuit Judges*.

RIPPLE, *Circuit Judge*. Petitioner Mohammad Abu Hashish
seeks review of an adverse decision of the Board of Immi-
gration Appeals (the "BIA" or "Board") that denied his
request for cancellation of removal and voluntary departure.
For the reasons set forth in the following opinion, we affirm
the decision of the BIA and dismiss the petition.

# I

# BACKGROUND

## A.  Facts

Mr. Abu Hashish is a Jordanian who originally was admitted to the United States on February 5, 1990, on a visitor's visa. Upon entering this country, Mr. Abu Hashish first worked as a stock boy, and then as a street vendor. In 1992, Mr. Abu Hashish began distributing candy to grocery stores. From 1994 to 2000, he owned and operated two different stores.

In November 1992, Mr. Abu Hashish pleaded guilty to theft of a recordable sound in violation of Illinois Criminal Code 38-16-1, *see* 720 ILCS 5/16-1;[1] he was sentenced to one year probation and was required to pay restitution. A.R. 271-72. In 1999, Mr. Abu Hashish again was charged with theft, specifically obtaining or exerting unauthorized control over the property of another, in violation of 720 ILCS 5/16-1(A)(1); on December 16, 2002, he pleaded guilty to this misdemeanor charge. Mr. Abu Hashish was given a "conditional discharge sentence" of two years and was required to pay restitution in the amount of $2,150. A.R. 269.

## B.  Administrative Proceedings

In June 2000, the former Immigration and Naturalization Service ("INS") issued Mr. Abu Hashish a notice to appear. At an April 20, 2001 hearing before an Immigration Judge ("IJ"), Mr. Abu Hashish conceded removabil-

---

[1] No further details concerning this crime are contained in the record.

ity but sought cancellation of removal. *See* 8 U.S.C. § 1229b. A hearing on his claim for relief was continued several times to allow counsel for Mr. Abu Hashish and for the Government to obtain documentation regarding the disposition of criminal charges against him. The IJ also suggested that Mr. Abu Hashish's counsel explore other avenues of relief should Mr. Abu Hashish's convictions render him statutorily ineligible for cancellation of removal. At a subsequent hearing, the IJ confirmed his receipt of a brief filed by Mr. Abu Hashish, which continued to assert his eligibility for cancellation of removal, as well as of other documents from the parties concerning Mr. Abu Hashish's convictions.

In a decision issued on April 22, 2004, the IJ determined that both Mr. Abu Hashish's 1992 and 2002 theft convictions constituted crimes of moral turpitude. Mr. Abu Hashish, therefore, was statutorily ineligible for cancellation of removal. The IJ also determined that, in light of these crimes, Mr. Abu Hashish had not established good moral character for the requisite number of years necessary to qualify for a grant of voluntary departure. *See* 8 U.S.C. § 1229c. Mr. Abu Hashish appealed to the BIA.

In a written opinion dated April 23, 2005, the BIA affirmed the IJ's decision. The BIA rejected Mr. Abu Hashish's argument that the IJ should have conducted "an inquiry into the nature of the respondent's theft convictions to determine whether such convictions in fact constitute crimes involving moral turpitude." A.R. 3. The BIA stated that "[i]t is well settled that theft, regardless of the sentenced [sic] imposed or the amount stolen, is a crime involving moral turpitude." *Id.* Furthermore, because both of Mr. Abu Hashish's crimes fell into this category, he could not invoke the exception available for individuals who had committed only one

"petty offense" as defined by statute. *See id.* (citing 8 U.S.C. § 1182(a)(2)(A)(ii)(II)). Finally, the BIA stated that, "in light of the respondent's most recent theft conviction, the Immigration Judge properly found that the respondent failed to establish his eligibility for voluntary departure." *Id.*

## II

## ANALYSIS

### A. Jurisdiction

Generally speaking, this court has jurisdiction to review final orders of removal under 8 U.S.C. § 1252. However, this court does not have jurisdiction to review the discretionary decision of the Attorney General to grant (or deny) cancellation of removal or voluntary departure. *See* 8 U.S.C. § 1252(a)(2)(B)(I). Despite this prohibition, we do have jurisdiction to review nondiscretionary determinations relating to an alien's eligibility for relief. *See, e.g., Morales-Morales v. Ashcroft*, 384 F.3d 418, 421-23 (7th Cir. 2004) (holding that the meaning of the term continuous physical presence for purposes of cancellation of removal is a nondiscretionary question of statutory interpretation). We also may review constitutional questions and questions of law raised in a petition for review of a final removal order. *See* 8 U.S.C. § 1252(a)(2)(D). Because Mr. Abu Hashish's claims with respect to both cancellation of removal and voluntary departure raise questions of law, we have jurisdiction to review those claims.

## B. Cancellation of Removal

### 1.

Mr. Abu Hashish argues that the BIA erred when it deemed his theft convictions "crimes of moral turpitude," which rendered him ineligible for cancellation of removal. Before evaluating Mr. Abu Hashish's specific claims, we turn briefly to the statutory requirements for cancellation of removal. *See id.* § 1229b(b)(1). Section 1229b(b)(1) provides:

> The Attorney General may cancel removal of, and adjust to the status of an alien lawfully admitted for permanent residence, an alien who is inadmissible or deportable from the United States if the alien—
>
> (A) has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application;
>
> (B) has been a person of good moral character during such period;
>
> (C) has not been convicted of an offense under section 1182(a)(2) [crimes of moral turpitude or drug-related crimes], 1227(a)(2), or 1227(a)(3) of this title (except in a case described in section 1227(a)(7) of this title where the Attorney General exercises discretion to grant a waiver); and
>
> (D) establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

Section 1229b goes on to state that any period of physical presence shall be deemed to end when the "alien has committed an offense referred to in section 1182(a)(2)"—a

crime of moral turpitude or a drug-related offense. *Id.* § 1229b(d)(1). With these standards in mind, we turn to Mr. Abu Hashish's claims on appeal.

**2.**

On the issue of whether his crimes constitute crimes of moral turpitude,[2] Mr. Abu Hashish submits that the Board should have looked beyond the crimes charged to his underlying conduct to determine whether his crimes fall within this category. Mr. Abu Hashish analogizes his first conviction—for theft of a recordable sound—to down-loading music over the internet. This type of activity, Mr. Abu Hashish maintains, does not arouse indignation in the general populace and, therefore, should not be considered a crime of moral turpitude. With respect to his second conviction, receiving stolen property, Mr. Abu Hashish suggests that, because a defendant could be convicted for this crime absent actual knowledge that the property was stolen, it does not entail the moral culpability usually associated with crimes of moral turpitude.

---

[2] As we recently observed in *Mei v. Ashcroft*, 393 F.3d 737, 739 (7th Cir. 2004), there is a split among the circuits regarding the level of deference owed to the BIA's decision to classify a particular crime as one "involving moral turpitude." In *Mei*, we found it unnecessary to decide the question because regardless of the level of deference—very great or none at all—the Board's determination that the crime at issue involved moral turpitude had to be upheld. We are in a similar situation here: Absent any deference to the BIA's classification of Mr. Abu Hashish's crimes, we still would reach the conclusion that his crimes of theft are crimes of moral turpitude.

We believe that Mr. Abu Hashish's arguments ignore the framework that we have established for analyzing whether a crime is one of moral turpitude for purposes of the immigration laws. We recently restated that framework in *Padilla v. Gonzales*, 397 F.3d 1016 (7th Cir. 2005):

> In determining whether a crime involves moral turpitude, we employ a "categorical" approach; that is, we determine whether a given crime necessarily involves moral turpitude by examining only the elements of the statute under which the alien was convicted and the record of conviction, not the circumstances surrounding the particular transgression. This practice is intended to promote uniformity and avoid the oppressive administrative burden of scrutinizing the specific conduct giving rise to criminal offenses.

*Id.* at 1019 (internal citations and quotation marks omitted). Other circuits follow the same approach. *See Vuksanovic v. United States Attorney General*, 2006 WL 358659, at *2 (11th Cir. Feb. 17, 2006) ("[T]he determination that a crime involves moral turpitude is made categorically based on the statutory definition or nature of the crime, not the specific conduct predicating a particular conviction."); *Cuevas-Gaspar v. Gonzales,* 430 F.3d 1013, 1017 (9th Cir. 2005) (using a categorical approach to determine whether a crime constitutes moral turpitude); *Rodriguez-Castro v. Gonzales*, 427 F.3d 316, 320 (5th Cir. 2005) (stating that, in determining whether a crime is a crime of moral turpitude, "we look to the statutory crime definition as interpreted by the state's courts, without regard to the particular circumstances surrounding the specific offender's violation"); *Partyka v. Attorney Gen. of the United States*, 417 F.3d 408, 411 (3d Cir. 2005) ("Whether an alien's crime involves moral turpitude is determined by the criminal statute and the record of

conviction, not the alien's conduct."); *Dalton v. Ashcroft*, 257 F.3d 200, 204 (2d Cir. 2001) ("[W]e have long endorsed categorical analyses of criminal statutes in the context of deportation orders for crimes of moral turpitude."). This court, and other courts of appeals, repeatedly have held that "theft" is a crime of moral turpitude. *Soetarto v. INS*, 516 F.2d 778, 780 (7th Cir. 1975) ("Theft has always been held to involve moral turpitude, regardless of the sentence imposed or the amount stolen."); *see also Cuevas-Gaspar*, 430 F.3d at 1020 ("We have held that crimes of theft or larceny are crimes involving moral turpitude."); *Nugent v. Ashcroft*, 367 F.3d 162, 165 (3d Cir. 2004) (holding that the alien's convictions for thefts involved crimes of moral turpitude); *Okoro v. INS*, 125 F.3d 920, 926 (5th Cir. 1997) (following interpretation of BIA and other circuit courts in holding that "the crime of theft is one involving moral turpitude"); *Chiaramonte v. INS*, 626 F.2d 1093, 1097 (2d Cir. 1980) ("It has been long acknowledged by this Court and every other circuit that has addressed the issue that crimes of theft, however they may be technically translated into domestic penal provisions, are presumed to involve moral turpitude.").

Applying this approach to the present case, it is clear that both of Mr. Abu Hashish's crimes fall into this category. Mr. Abu Hashish's initial conviction is for theft of a recorded sound under the Illinois theft statute, formerly codified at Illinois Criminal Code 38-16-1. Although Mr. Abu Hashish's record of conviction does not reflect the subsection under which Mr. Abu Hashish was convicted,[3] the subsections are indistinguishable with respect to the state of mind required

---

[3] Mr. Abu Hashish did not submit to the IJ the charging papers for either of his crimes.

for conviction: Each of the subsections involves the *knowing* exertion of authority or control over the property of another.

The same is true for Mr. Abu Hashish's second conviction in 2002. Mr. Abu Hashish was convicted of misdemeanor theft under 720 ILCS 5/16-1(a), part of the recodified "theft" chapter of the Illinois code, which involves "knowingly" "obtain[ing] or exert[ing] unauthorized control over property of the owner."[4] Thus, both of Mr. Abu Hashish's crimes involve actions traditionally considered "theft" and, therefore, are crimes of moral turpitude for purposes of the immigration laws.

Despite this well-established approach, Mr. Abu Hashish maintains that our recent decision in *Abdelqadar v. Gonzales*, 413 F.3d 668 (7th Cir. 2005), requires that we look at his specific actions, as opposed to the elements of the crime of conviction, to determine whether the crime committed involved moral turpitude. *See* Appellant's Br. at 11-12. We do not believe that *Abdelqadar* supports Mr. Abu Hashish's position. Although *Abdelqadar* is critical of some of this court's decisions discussing crimes of moral turpitude, the court nevertheless applied the categorical approach in

---

[4]  Although not designated in the record of conviction, Mr. Abu Hashish describes this conviction as being for possession of stolen property. 720 ILCS 5/16-1(a) states that "[a] person commits theft when he knowingly: . . . [o]btains control over stolen property knowing the property to have been stolen or under such circumstances as would reasonably induce him to believe that the property was stolen . . . ." Even if Mr. Abu Hashish was convicted under this subsection, receiving stolen property requires the same state of mind, "knowingly," as other crimes of theft, and has been recognized as a crime of moral turpitude. *See, e.g., Smirko v. Ashcroft*, 387 F.3d 279, 283 (3d Cir. 2004).

determining that Abdelqadar's crimes—purchasing food stamps from welfare recipients—fell within this category. *See Abdelqadar*, 413 F.3d at 672 ("The goal is to determine what the accused was convicted of, not what he did in fact, so the scope of the inquiry is correspondingly limited."). Consequently, *Abdelqadar* does not suggest that a different analysis should be applied in the present case.[5]

---

[5] Mr. Abu Hashish also claims that, even if one of his crimes is deemed a crime of moral turpitude, that crime falls within the "petty crime" exception set forth at 8 U.S.C. § 1182(a)(2)(A)(ii). Section 1182(a)(2)(A)(ii) provides that a crime of moral turpitude shall not render an alien inadmissible (and, therefore, ineligible for cancellation of removal) if:

> (I) the crime was committed when the alien was under 18 years of age, and the crime was committed (and the alien released from any confinement to a prison or correctional institution imposed for the crime) more than 5 years before the date of application for a visa or other documentation and the date of application for admission to the United States, or

> (II) the maximum penalty possible for the crime of which the alien was convicted (or which the alien admits having committed or of which the acts that the alien admits having committed constituted the essential elements) did not exceed imprisonment for one year and, if the alien was convicted of such crime, the alien was not sentenced to a term of imprisonment in excess of 6 months (regardless of the extent to which the sentence was ultimately executed).

8 U.S.C. § 1182(a)(2)(A)(ii).

However, Mr. Abu Hashish concedes that, if both of his crimes are crimes of moral turpitude, he may not invoke this statutory exception. *See* Appellant's Br. at 20 n.5. Consequently,

(continued...)

## C. Voluntary Departure

Mr. Abu Hashish also argues that the BIA applied the incorrect standard in determining whether he was eligible for voluntary departure. Mr. Abu Hashish maintains that, because he requested voluntary departure from the outset of his proceedings, the BIA should have evaluated his voluntary departure claim according to the standards for grants made "prior to the completion of . . . proceedings," as opposed to the standards for grants of voluntary departure made "at the conclusion of a proceeding." *See* 8 U.S.C. § 1229c(a)(1)[6] & (b)(1).[7]

---

[5] (...continued)
we have no occasion to consider whether either of his convictions, standing alone, may fall within this exception.

[6] 8 U.S.C. § 1229c(a)(1) states: "The Attorney General may permit an alien voluntarily to depart the United States at the alien's own expense under this subsection, in lieu of being subject to proceedings under section 1229a of this title or prior to the completion of such proceedings, if the alien is not deportable under section 1227(a)(2)(A)(iii)."

[7] 8 U.S.C. § 1229c(b) states:

(b) At conclusion of proceedings

(1) In general

The Attorney General may permit an alien voluntarily to depart the United States at the alien's own expense if, at the conclusion of a proceeding under section 1229a of this title, the immigration judge enters an order granting voluntary departure in lieu of removal and finds that—

(A) the alien has been physically present in the United States for a period of at least one year immediately preceding the date the notice to appear was

(continued...)

The immigration laws distinguish between a grant of voluntary departure at these different stages of removal proceedings. An IJ may grant voluntary departure prior to the completion of proceedings so long as the alien is not deportable based on the commission of an aggravated felony, *see id.* § 1227(a)(2)(A)(iii), or based on involvement in terrorist activities, *see id.* § 1227(a)(4)(B). *Id.* § 1229c(a)(1). An IJ may grant voluntary departure at the conclusion of proceedings as well; however, in order to do so, the IJ must make additional findings that (1) the alien has been physically present in the United States for one year, (2) "the alien is, and has been, a person of good moral character for at least 5 years immediately preceding the alien's application for voluntary departure," and (3) the alien has the means and intent to depart the United States. *Id.* § 1229c(b)(1).

As noted above, Mr. Abu Hashish believes that, because he requested voluntary departure at the master calendar hearing,[8] his request should have been evaluated

---

[7] (...continued)

> served under section 1229(a) of this title;
>
> (B) the alien is, and has been, a person of good moral character for at least 5 years immediately preceding the alien's application for voluntary departure;
>
> (C) the alien is not deportable under section 1227(a)(2)(A)(iii) or section 1227(a)(4) of this title; and
>
> (D) the alien has established by clear and convincing evidence that the alien has the means to depart the United States and intends to do so.

[8] Mr. Abu Hashish does not identify, by reference to the Admin-

(continued...)

according to the standards for grants of departure made prior to the completion of proceedings. However, the regulations implementing § 1229c make clear that the timing of a request, standing alone, does not guarantee that the standards for grants of departure "prior to the completion of such proceedings" will govern the request. 8 C.F.R. § 1240.26 provides in relevant part:

> § 1240.26 Voluntary departure—authority of the Executive Office for Immigration Review.
>
> . . .
>
> (b) Prior to completion of removal proceedings—
>
> > (1) Grant by the immigration judge.
> >
> > (i) An alien may be granted voluntary departure by an immigration judge pursuant to section 240B(a) of the Act only if the alien:
> >
> > > (A) Makes such request prior to or at the master calendar hearing at which the case is initially calendared for a merits hearing;
> > >
> > > (B) Makes no additional requests for relief (or if such requests have been made, such requests are withdrawn prior to any grant of voluntary departure pursuant to this section);
> > >
> > > (C) Concedes removability;

---

[8] (...continued) istrative Record, when this request took place, and we have been unable to locate the request in the record. However, the Government does not dispute that the request was made, and, therefore, we shall presume for purposes of this discussion that such a request was indeed made at the master calendar hearing.

> (D) Waives appeal of all issues; and
>
> (E) Has not been convicted of a crime described in section 101(a)(43) of the Act and is not deportable under section 237(a)(4). . . .

Thus, Mr. Abu Hashish's timely request, standing alone, was not sufficient to make a grant of departure prior to the conclusion of proceedings available to him. He also was required to forego (or withdraw) requests for additional relief and to waive all issues on appeal. Absent these actions, which Mr. Abu Hashish did not take, an IJ could not have granted Mr. Abu Hashish voluntary departure "prior to the completion of . . . proceedings."[9] Consequently, we do not believe that the BIA applied the incorrect standard when it evaluated Mr. Abu Hashish's eligibility for voluntary departure based on the requirements for grants "at the conclusion of a proceeding."

Mr. Abu Hashish makes one final argument with respect to the denial of voluntary departure. He maintains that, even if his request was subject to the more stringent requirements for grants of voluntary departure at the conclusion of proceedings, *see* 8 U.S.C. § 1229c(b)(1), the BIA did not employ the correct standard in determining whether he had established "good moral character." According to Mr. Abu Hashish, the BIA should have looked beyond his convictions to numerous other factors in making this assessment. Again, however, Mr. Abu Hashish's argument ignores the statutory requirements. Although a precise definition of "good moral character" is not set forth in the statute, the statute does preclude a finding of "good moral

---

[9] Mr. Abu Hashish does not argue that the INS exceeded its authority in adopting the regulation.

character" under certain circumstances. 8 U.S.C. § 1101(f) provides:

> No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was—
>
> . . .
>
> (3) a member of one or more of the classes of persons, whether inadmissible or not, described in paragraphs (2)(D), (6)(E), and (10)(A) of section 1182(a) of this title; or subparagraphs (A) and (B) of section 1182(a)(2) of this title and subparagraph (C) thereof of such section (except as such paragraph relates to a single offense of simple possession of 30 grams or less of marihuana), if the offense described therein, for which such person was convicted or of which he admits the commission, was committed during such period . . . .

8 U.S.C. 1101(f)(3). For its part, § 1182(a)(2)(A) declares inadmissible "any alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of . . . (I) a crime involving moral turpitude (other than a purely political offense) or an attempt or conspiracy to commit such a crime." *Id.* § 1182(a)(2)(A). Thus, as a matter of law, an alien convicted of a crime of moral turpitude within the applicable time period is not a person of good moral character. As we have noted earlier, Mr. Abu Hashish's 2002 conviction involved a crime of moral turpitude and prevented him from establishing "good moral character" at the time his proceedings concluded. The BIA, therefore, did not commit an error of law in determining that Mr. Abu Hashish was statutorily ineligible for voluntary departure based on this conviction.

**Conclusion**

For the foregoing reasons, the petition for review is denied, and the judgment of the BIA is affirmed.

PETITION DENIED

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

USCA-02-C-0072—3-24-06