Present:  All the Justices

CHARLENE MARIE WHITEHEAD

v.  Record No. 080775      OPINION BY JUSTICE DONALD W. LEMONS
                                    JUNE 4, 2009[*]
COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

In this appeal, we consider whether the Court of Appeals erred in affirming the multiple convictions of Charlene Marie Whitehead ("Whitehead") for receiving stolen property and the revocation of Whitehead's prior suspended sentences on unrelated offenses based in part upon the convictions at issue in this appeal.

I.  Facts and Proceedings Below

On December 22, 2005, police officers from the City of Danville entered an apartment in Danville with warrants to arrest Whitehead and Jamil A. Walden ("Walden"), the father of Whitehead's child.  The officers had also received a tip from an informant indicating that property stolen from numerous motor vehicles was being kept in the apartment.  After forcing entry into the apartment, the officers arrested Whitehead and Walden.  Upon entry, they observed a variety of computer equipment, cellular telephones, and compact discs in plain view around the apartment, and discovered numerous bags

_____
[*] Revised October 22, 2009.

containing miscellaneous other personal property in a closet and in dresser drawers.

Five days after her arrest, Whitehead gave police a signed statement, in which she described the thefts committed by Walden.  Whitehead said she knew Walden was breaking into cars, stealing property, and bringing it back to the apartment, and that Walden "was stealing to try and support me and our daughter."  The statement also listed some of the stolen items, with comments from Whitehead as to their ownership or origins, and Whitehead's admission that Walden

> was helping pay the rent and bills at the house.
> I knew that Jamil stealing was wrong.  I used to
> fuss and yell at Jamil about stealing and
> bringing the stuff in the house, but it seemed
> like the only way we could get by.  My only
> concern is taking care of and being with my
> daughter, and that's the only reason I allowed
> this to go on in my house.  I was scared that
> social services would take my child if I could
> not keep a roof over her head.

While the rental agreement for the apartment listed both Whitehead and Walden as co-tenants, Walden's was the only signature on the agreement.  Mack R. Eatmon, Sr., the "maintenance man" for the apartment complex, confirmed that Whitehead resided at the apartment, was present there "mostly everyday" or "off and on everyday," and that on one or two occasions he had collected rent payments for the apartment from Whitehead.

At trial in the Circuit Court for the City of Danville, Whitehead recanted the substance of her statement, claiming she did not know Walden was "breaking into cars," and that all she knew was that Walden "use to come back [to the apartment] with a bunch of stuff. Sometimes he come back with money." However, on cross-examination, Whitehead conceded she knew that the items Walden brought back to the apartment did not belong to him. Walden, who pled guilty to the thefts and testified on Whitehead's behalf, claimed she was not involved in the thefts and that he never gave her any of the stolen items. However, Whitehead did stipulate that these items were all stolen from various owners' vehicles and had been identified by their respective owners when the items were claimed at the police station.

The trial court "merged" Whitehead's 40 indictments into 32 counts of receiving stolen property,[1] and convicted her on each of the 32 counts. At a later sentencing hearing, Whitehead was sentenced under the first six counts to five years' imprisonment with four years suspended on each count, for a total of 30 years' imprisonment with 24 years suspended, and the trial court withheld sentencing on the other 26 counts conditioned on 25 years of good behavior.

---

[1] The trial court combined several of the indictments for thefts that were part of the same transaction.

On the same day as her sentencing hearing, Whitehead appeared before a different judge of the Danville Circuit Court, who was asked by the Commonwealth to revoke the suspension of Whitehead's prior sentences for previous convictions of receiving stolen property.[2]  Whitehead pled guilty to violating her probation, and the court received evidence of her new convictions and heard evidence of other probation violations, including the failure to maintain contact with her probation officer and the failure to make restitution for her prior offenses.  The trial court revoked its prior suspension, and sentenced her to 17 years, 4 months of imprisonment with 12 years, 4 months suspended, for a total of 5 years in addition to her sentences on her new convictions.

The Court of Appeals affirmed both the new convictions and the revocation order in an unpublished opinion.  Whitehead v. Commonwealth, Record No. 1699-06-3 (Mar. 25, 2008).  Citing Whitehead's statement to police, her testimony at trial, and the affidavits of the theft victims, the Court of Appeals held that the evidence was sufficient to support the trial court's

---

[2]  Whitehead had previously been convicted of receiving stolen property under 13 indictments, and on May 9, 2005 had been sentenced on those convictions to a total of 18 years' imprisonment, with all 18 years suspended.  The suspension was conditioned on Whitehead's completion of three years of probation, payment of restitution, and maintenance of good behavior for five years.

finding that Whitehead received the stolen property.  Id.,
slip op. at 5.  Additionally, the Court of Appeals held that
the evidence of the stolen items found in the apartment and
Whitehead's admission that she knew the items did not belong
to Walden supported the conclusion that "a rational trier of
fact could conclude that [Whitehead] either received stolen
property from Walden or aided in concealing property he
stole."  Id.  Finally, because Whitehead conceded the
propriety of the trial court's revocation assuming her new
convictions were affirmed, the Court of Appeals also affirmed
the revocation order.  Id., slip op. at 6.

We awarded Whitehead an appeal, limited to the following
three assignments of error:

1. The Court of Appeals erred in ruling the trial court
   was not clearly erroneous in finding the evidence
   sufficient to prove Whitehead received the stolen
   property.

2. The Court of Appeals erred in ruling the trial court
   was not clearly erroneous in finding the evidence
   sufficient to prove Whitehead aided in concealing
   stolen property.

3. The Court of Appeals erred in ruling the trial court
   did not abuse its discretion in finding reasonable
   cause to violate.

## II.  Analysis

A.  Receipt of Stolen Property

5

Whitehead first contends that the evidence introduced by the Commonwealth at trial was insufficient to convict her of receiving stolen property.

> When analyzing a challenge to the sufficiency of the evidence, this Court reviews the evidence in the light most favorable to the prevailing party at trial and considers any reasonable inferences from the facts proved. The judgment of the trial court will only be reversed upon a showing that it "is plainly wrong or without evidence to support it."

Wilson v. Commonwealth, 272 Va. 19, 27, 630 S.E.2d 326, 330 (2006) (quoting Code § 8.01-680) (citation omitted).

Whitehead was found guilty of 32 counts of violating Code § 18.2-108, which at the time of Whitehead's convictions[3] stated: "If any person buy or receive from another person . . . any stolen goods or other thing, knowing the same to have been stolen, he shall be deemed guilty of larceny thereof, and may be proceeded against, although the principal offender be not convicted." Code § 18.2-108 (2004). This Court has previously established that to prove this offense by showing receipt, the Commonwealth must demonstrate that the property was "previously stolen by some person other than the accused; that the accused received the [property] from such other person; that at the time he received [the property] he

_____

[3] Whitehead was convicted at a hearing on May 24, 2006. Subsequent amendments to Code § 18.2-108 in 2008 made additions and alterations not relevant to this appeal. See 2008 Acts ch. 578.

6

knew [it] had been stolen; and that he received [it] with dishonest intent." Reaves v. Commonwealth, 192 Va. 443, 449, 65 S.E.2d 559, 563 (1951). Whitehead does not challenge the Commonwealth's proof that the property was stolen, but assigns error to the trial court's holding that the evidence was sufficient to prove she received the stolen property or aided in its concealment.

The Commonwealth has never contended that Whitehead was involved in the actual theft of items from the various vehicles, or that she physically received the stolen items from Walden. Instead, the Commonwealth premised its argument as to receipt upon a concept of "constructive receipt," because Whitehead received benefits flowing from the sale of the stolen goods. In her statement to police, Whitehead conceded that Walden was "stealing to try to support me and our daughter," and that Walden "was helping pay the rent and bills at the house" with money he obtained by selling the property he had stolen. Based on this evidence, the Commonwealth argued,

> this is a case in reference not to her actually
> stealing the items but receiving those items as
> Mr. Walden was bringing them back to the
> apartment and then not only allowing it to go
> on, but I guess getting fruit in reference to
> that, having her bills paid as toward whatever
> items was stolen and they could get any money
> for it.

7

On appeal, the Court of Appeals accepted this proposition, noting that Whitehead admitted that "the proceeds of the thefts were used to support her and the couple's child." Whitehead, Record No. 1699-06-3, slip op. at 5. Based on this admission, the Court of Appeals concluded that "[t]he trial court had sufficient information to find [Whitehead] knew that the items she received from Walden were stolen." Id. (emphasis added).

On appeal before this Court, the Commonwealth maintains that Whitehead's acceptance of the proceeds of the thefts committed by Walden constituted receipt for the purposes of Code § 18.2-108. In support of this theory of constructive receipt, the Commonwealth cites People ex rel. Briggs v. Hanley, 123 N.E. 663, 664 (N.Y. 1919), in which the Court of Appeals of New York sustained a conviction for receiving stolen property when the defendant accepted loan proceeds she knew her boyfriend had obtained using stolen stock certificates as collateral.

However, we have never recognized this manner of receipt for the purposes of this offense in our decisions. Furthermore, such a manner of receipt does not fall within the plain meaning of Code § 18.2-108. On this point, the distinction between the Virginia statute and the New York statute is significant. While the version of Virginia Code

8

§ 18.2-108 in effect at the time of the alleged offenses made it a crime to "buy or receive from another person . . . any stolen goods or other thing," the relevant New York statute addresses "Criminal possession of stolen property," and provides that a person commits that offense "when he knowingly possesses stolen property, <u>with intent to benefit himself or a person other than an owner thereof</u>."  N.Y. Penal Law § 165.40 (Consol. 2009) (emphasis added).[4]  The "benefit" element of the New York statute is not a part of the Virginia statute.  The Court of Appeals was plainly wrong in holding that Whitehead "received" the property merely because she benefited from the proceeds of its sale.

In addition to its reliance on Whitehead's "constructive receipt" of benefits, the Commonwealth argues, for the first time on appeal, that Whitehead received the stolen property itself under the doctrine of constructive possession.  With regard to the receipt element of the offense of receiving stolen property, we have established that "[w]hile reception of the stolen goods by the accused must be substantially proven, actual physical handling by [her] is not necessary. It is well settled that constructive possession is

_____

[4] The language of the New York statute applied in <u>People ex rel. Briggs</u> is different from that featured in current N.Y. Penal Law § 165.40.  <u>See</u> 123 N.E. at 664 (quoting former N.Y. Penal Law § 1308).  However, the legislative history notes to N.Y. Penal Law § 165.40 state that the substance of that statute is derived in part from former N.Y. Penal Law § 1308.

9

sufficient." Longman v. Commonwealth, 167 Va. 461, 465, 188 S.E. 144, 145 (1936). To establish constructive possession, the Commonwealth is required to "present evidence of acts, statements, or conduct by the defendant or other facts and circumstances proving that the defendant was aware of the presence and character of the [property] and that the [property] was subject to [her] dominion and control." Bolden v. Commonwealth, 275 Va. 144, 148, 654 S.E.2d 584, 586 (2008).

However, whether Whitehead received the stolen property here by constructively possessing it is not properly before us, because the Commonwealth makes this argument for the first time on appeal. It is true that "[w]e do not hesitate, in a proper case, where the correct conclusion has been reached but the wrong reason given, to sustain the result and assign the right ground." Eason v. Eason, 204 Va. 347, 352, 131 S.E.2d 280, 283 (1963). However, cases in which the party seeking affirmance failed to present the argument in the trial court, such that the trial court did not have an opportunity to rule on the argument, are not "proper cases" for the application of the doctrine. Id. This principle applies in criminal as well as civil cases. Brown v. Commonwealth, 270 Va. 414, 421 n.2, 620 S.E.2d 760, 764 n.2 (2005). Here, the Commonwealth did not argue constructive possession in the trial court or before

the Court of Appeals. Consequently, we will not consider the Commonwealth's constructive possession argument here.

B. Concealment of Stolen Property

Whitehead next argues that the Court of Appeals erred in holding that the evidence was sufficient to convict her based upon aiding in the concealment of the stolen property. After reviewing the trial record, the Court of Appeals held that in addition to proving Whitehead's receipt of the property, the evidence introduced at trial "further supports the trial court's finding of guilt" because it demonstrated that Whitehead, "who lived in an apartment filled with items she knew did not belong to Walden, was helping to conceal property that she knew was stolen." Whitehead, Record No. 1699-06-3, slip op. at 5.

Proving that a defendant helped to conceal stolen property is an alternate means of establishing guilt under Code § 18.2-108. To prove the offense by this method, the Commonwealth must show beyond a reasonable doubt that (1) the property was previously stolen and (2) the defendant aided in concealing it (3) with knowledge that it was stolen and (4) with a dishonest intent. Starks v. Commonwealth, 225 Va. 48, 54, 301 S.E.2d 152, 156 (1983).

However, the record reveals that the Commonwealth failed to make any argument as to concealment at trial or before the

11

Court of Appeals.  The first appearance of the concealment theory in the record is in the opinion of the Court of Appeals.  Because this argument was not made at trial, the Court of Appeals erred when it held that the evidence provided this additional rationale to support Whitehead's convictions. Brown, 270 Va. at 421 n.2, 620 S.E.2d at 764 n.2, Eason, 204 Va. at 352, 131 S.E.2d at 283; see also Commonwealth v. Shifflett, 257 Va. 34, 44, 510 S.E.2d 232, 237 (1999) (Court of Appeals may not "recast" the evidence to support an argument not made at trial).

The Court of Appeals has previously observed that:

> An appellate court may affirm the judgment of a trial court when it has reached the right result for the wrong reason. However, [t]he rule does not always apply. . . . [T]he proper application of this rule does not include those cases where, because the trial court has rejected the right reason or confined its decision to a specific ground, further factual resolution is needed before the right reason may be assigned to support the trial court's decision.

Harris v. Commonwealth, 39 Va. App. 670, 675-676, 576 S.E.2d 228, 231 (2003), Blackman v. Commonwealth, 45 Va. App. 633, 642-643, 613 S.E.2d 460, 465 (2005) ("an appellee may argue for the first time on appeal any legal ground in support of a judgment so long as it does not require new factual

12

determinations.") We agree with these holdings by the Court of Appeals.

In this case, the offense of receiving stolen property may be proven in a number of different ways. However, the proof requirements of each method are different. A conviction based upon actual possession or constructive possession or aiding in concealment is predicated upon presentation of different facts that support the elements of the offense according to the method of proof selected by the Commonwealth. The method of proof selected by the Commonwealth in this case was a theory of "constructive receipt" based upon benefit received – in this case, the proceeds from Walden's sale of the stolen property. Such a method of proof is not available under Code § 18.2-108. No other method of proof was the subject of argument or presentation of evidence at trial.

Both the constructive possession and concealment methods of proof require presentation of facts that would not be necessary under other methods of proof supporting conviction for receipt of stolen property. The Commonwealth clearly articulated its case for prosecuting Whitehead – constructive receipt. Because the Commonwealth limited its method of proof at trial, Whitehead was not on notice to present evidence to rebut any other method of proof possible. The Constitution of Virginia provides in pertinent part: "in criminal prosecutions

13

a man hath a right to demand the cause and nature of his accusation, to be confronted with the accusers and witnesses, and to call for evidence in his favor." VA. CONST. art. I, § 8. To allow the Commonwealth to advance alternative methods of proof and conviction never argued in the trial court and requiring different elements of proof for the first time on appeal would deny Whitehead these rights.

Because the evidence was insufficient to support Whitehead's convictions under Code § 18.2-108, we will reverse the judgment of the Court of Appeals affirming her convictions.

### C. Revocation of Suspended Sentence

Finally, Whitehead challenges the trial court's revocation of her suspended sentence for prior convictions of receiving stolen property, arguing that the trial court based its revocation upon the new convictions at issue in this appeal. The Commonwealth responds by asserting that even without the new convictions, Whitehead was guilty of other probation violations that provided the trial court with sufficient grounds for revocation. The Court of Appeals, noting that Whitehead conceded the propriety of the revocation should the new convictions be held valid, affirmed the revocation order based on its affirmance of the convictions. Whitehead, Record No. 1699-06-3, slip op. at 6.

14

A trial court's discretion to revoke the suspension of a previously imposed sentence is governed by Code § 19.2-306, which grants a trial court the authority to "revoke the suspension of sentence for any cause the court deems sufficient that occurred at any time within the probation period, or within the period of suspension fixed by the court."  However, we have noted that

> [t]he cause deemed by the court to be sufficient for revoking a suspension must be a reasonable cause.  The sufficiency of the evidence to sustain an order of revocation is a matter within the sound discretion of the trial court.  Its finding of fact and judgment thereon are reversible only upon a clear showing of abuse of such discretion.  The discretion required is a judicial discretion, the exercise of which implies conscientious judgment, not arbitrary action.

Hamilton v. Commonwealth, 217 Va. 325, 327, 228 S.E.2d 555, 556 (1976) (citation and quotation marks omitted).

Here, the record indicates that the trial court placed significant weight upon Whitehead's new convictions in the revocation of the suspension of her prior sentences.  At the revocation hearing, the trial court stated, "I mean I fell all over myself giving you a break a year and a-half ago or a year ago, and you just started up within two months.  I mean I'm not personally offended.  It doesn't surprise me that people do that, but you've done this to yourself and I'm sorry."  It is clear that Whitehead's new convictions played a substantial

role in the trial court's decision to revoke her suspended sentences and impose additional incarceration.

It is true, as the Commonwealth contends, that the trial court had before it evidence of other probation violations by Whitehead, including failing to make restitution for the earlier thefts and failing to maintain contact with her probation officer. However, because we have reversed her new convictions, and because those convictions were obviously influential at her revocation hearing, she is entitled to a new hearing.

### III. Conclusion

We hold that the Court of Appeals erred in affirming Whitehead's convictions and consequently erred in affirming the trial court's order of revocation of her probation. Accordingly, we will reverse the judgment of the Court of Appeals as to the 32 convictions for receiving stolen property and dismiss the indictments. With regard to the revocation of previously suspended sentences, we will reverse the judgment of the Court of Appeals and the trial court and remand to the Court of Appeals with instructions to remand the matter to the trial court for a new revocation hearing.

Reversed and final judgment in part, and remanded in part.

16