**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 22-1147**

CESAR SOLIS-FLORES,

Petitioner,

v.

PAMELA JO BONDI, Attorney General,

Respondent.

On Remand from the Supreme Court of the United States.  (S. Ct. No. 23-913)

Submitted:  October 7, 2024                    Decided:  November 13, 2025

Before DIAZ, Chief Judge, and RUSHING and HEYTENS, Circuit Judges.

Petition for review denied by published opinion.  Judge Rushing wrote the opinion, in which Chief Judge Diaz and Judge Heytens joined.

**ON BRIEF:**  Benjamin R. Winograd, IMMIGRANT & REFUGEE APPELLATE CENTER, LLC, Alexandria, Virginia; Lisa T. Johnson-Firth, VANDERPOOL, FROSTICK & NISHANIAN, PC, Manassas, Virginia; Jeffrey L. Fisher, Menlo Park, California, Daniel Lautzenheiser, O'MELVENY & MEYERS LLP, Washington, D.C., for Petitioner.  Brian M. Boynton, Principal Deputy Assistant Attorney General, Holly M. Smith, Assistant Director, David J. Schor, Senior Litigation Counsel, Lindsay Glauner, Senior Litigation Counsel, Sarah K. Pergolizzi, Senior Litigation Counsel, Rodolfo D. Saenz, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

RUSHING, Circuit Judge:

Cesar Solis-Flores, a native and citizen of Mexico, petitions for review of a final order of removal entered by the Board of Immigration Appeals. The Board determined that Solis-Flores was ineligible for cancellation of removal because his prior conviction for receipt of stolen property was a crime involving moral turpitude. In a published opinion, we agreed and so denied the petition for review in part.[1] *Solis-Flores v. Garland*, 82 F.4th 264 (4th Cir. 2023), *vacated*, 144 S. Ct. 2709 (2024). In reaching that decision, we deferred to the Board's reasonable determination regarding what type of conduct involves moral turpitude, applying *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).

After we issued our prior opinion, the Supreme Court of the United States overruled *Chevron* in *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024). The Court then vacated our decision in this case and remanded for reconsideration in light of *Loper Bright*. Upon reconsideration, and after reviewing the parties' supplemental briefs, we conclude that *Loper Bright* changes the analysis but does not alter the result here. Without applying *Chevron* deference, we again conclude that Solis-Flores's conviction for receipt of stolen property was a crime involving moral turpitude. Accordingly, we deny his petition.

---

[1] We also granted the petition in part and remanded to the Board to consider Solis-Flores's request for a remand to the immigration judge (IJ) for a new period of voluntary departure. In his subsequent supplemental brief, Solis-Flores informed us that he has withdrawn that request. So we no longer address the voluntary departure issue he raised in his original briefing.

2

I.

In 2012, the Department of Homeland Security issued Solis-Flores a notice to appear, charging that he was removable as an alien present in the United States without having been admitted or paroled. Solis-Flores admitted he was removable as charged and applied for cancellation of removal. *See* 8 U.S.C. § 1229b(b). After conducting a hearing, the IJ concluded that Solis-Flores was not eligible for cancellation of removal because he had previously been convicted of a crime involving moral turpitude. *See* 8 U.S.C. §§ 1229b(b)(1)(C), 1227(a)(2)(A)(i). Specifically, Solis-Flores had a 2000 conviction for receiving stolen property in violation of Virginia Code § 18.2-108.

Solis-Flores appealed to the Board. Reviewing de novo, the Board held that his conviction for receipt of stolen property was a crime involving moral turpitude and therefore Solis-Flores was ineligible for cancellation of removal. Solis-Flores then petitioned this Court for review.

II.

The only question before us is whether Solis-Flores's Virginia conviction for receipt of stolen property is a crime involving moral turpitude under the Immigration and Nationality Act (INA). That is a question of law, which we have jurisdiction to resolve, *see* 8 U.S.C. § 1252(a)(2)(B)(i), (a)(2)(D), and which we review de novo, *Mohamed v. Holder*, 769 F.3d 885, 888 (4th Cir. 2014).

To be eligible for cancellation of removal, Solis-Flores bore the burden to prove, among other things, that he had not been convicted of a crime involving moral turpitude. 8 U.S.C. §§ 1229a(c)(4)(A), 1229b(b)(1)(C), 1227(a)(2)(A)(i); *see Pereida v. Wilkinson*,

3

141 S. Ct. 754, 758 (2021). This Court has "'developed a sound definition of moral turpitude' that is consistent with" the Board's definition. *Ortega-Cordova v. Garland*, 107 F.4th 407, 411 (4th Cir. 2024) (quoting *Gomez-Ruotolo v. Garland*, 96 F.4th 670, 678 (4th Cir. 2024)); *see Chavez v. Bondi*, 134 F.4th 207, 213 (4th Cir. 2025) (reaffirming this Court's moral turpitude precedent after *Loper Bright*). Namely, "moral turpitude" refers to behavior that not only violates a statute but also is inherently immoral, that is, "'inherently base, vile, or depraved.'" *Uribe v. Sessions*, 855 F.3d 622, 625 (4th Cir. 2017) (quoting *Mohamed*, 769 F.3d at 888); *see Gomez-Ruotolo*, 96 F.4th at 678. Such a crime "requires two essential elements: a culpable mental state and reprehensible conduct." *Sotnikau v. Lynch*, 846 F.3d 731, 736 (4th Cir. 2017) (internal quotation marks omitted). To satisfy the mens rea element, a crime must require "'an intent to achieve an immoral result or willful disregard of an inherent and substantial risk that an immoral act will occur.'" *Ortega-Cordova*, 107 F.4th at 411 (quoting *Ramirez v. Sessions*, 887 F.3d 693, 704 (4th Cir. 2018)). To meet the actus reus requirement, "the crime 'must involve conduct that . . . violates a moral norm.'" *Gomez-Ruotolo*, 96 F.4th at 678 (quoting *Mohamed*, 769 F.3d at 888).

In assessing whether a state crime involves moral turpitude under the INA, we apply the "categorical approach," which "requires that we examine the statutory elements of the crime" rather than the facts underlying the particular violation. *Prudencio v. Holder*, 669 F.3d 472, 484 (4th Cir. 2012). Only if "all permutations" of the proscribed conduct involve moral turpitude will the offense categorically qualify. *Martinez v. Sessions*, 892 F.3d 655, 658 (4th Cir. 2018).

At the time of Solis-Flores's conviction in 2000, Section 18.2-108 of the Virginia Code stated: "If any person buy or receive from another person, or aid in concealing, any stolen goods or other thing, knowing the same to have been stolen, he shall be deemed guilty of larceny thereof . . . ."  Virginia courts have identified four elements required for conviction under the statute:

> (1) That the goods or other things were previously stolen by some other person.  (2) That the accused bought or received them from another person, or aided in concealing them.  (3) That at the time he so bought or received them, or aided in concealing them, he knew they had been stolen.  (4) That he so bought or received them, or aided in concealing them, *malo animo*, or with a dishonest intent.

*Patterson v. Commonwealth*, 181 S.E. 281, 282 (Va. 1935) (internal quotation marks and citations omitted); *see Whitehead v. Commonwealth*, 684 S.E.2d 577, 580 (Va. 2009).

Solis-Flores argues that this Virginia offense cannot qualify as a crime involving moral turpitude because a person could violate the statute by knowingly receiving stolen property despite intending to return it to its rightful owner.  Imagine a fence with a heart of gold.  Or a joyrider who borrows a car from a friend, knowing the friend stole it from a third party, but who intends to take the car for a drive and then return it, not to the thieving friend but to the third-party owner.  In Solis-Flores's view, these individuals have not violated a moral norm because they have not acted with intent "to permanently or substantially deprive the victim of his property."  Suppl. Br. 17.

The initial problem with Solis-Flores's argument is his failure to demonstrate that Section 18.2-108 applies to such conduct.  A conviction under the statute requires proof that the property had been stolen by some other person and that the accused bought,

5

received, or aided in concealing the property knowing it had been stolen. *Patterson*, 181 S.E. at 282. In Virginia, larceny is "'the wrongful or fraudulent taking of personal goods of some intrinsic value, belonging to another, without his assent, and *with the intention to deprive the owner thereof permanently.*'" *Chavez*, 134 F.4th at 214 (quoting *Welch v. Commonwealth*, 896 S.E.2d 867, 870 (Va. Ct. App. 2024)). So a receipt conviction requires the Commonwealth to prove that someone "took the [property] with the intent to permanently deprive" the owner of it. *Marshall v. Commonwealth*, No. 1706-15-1, 2017 WL 343620, at *2 (Va. Ct. App. Jan. 24, 2017). And to violate Section 18.2-108, the accused must have bought, received, or aided in concealing the stolen property with "dishonest intent," *Patterson*, 181 S.E. at 282, that is, "intend[ing] to continue acting adversely to the owner's property interest in the [property]," *Jones v. Commonwealth*, No. 0351-16-1, 2017 WL 586519, at *3 (Va. Ct. App. Feb. 14, 2017); *see id.* at *3 n.1 (rejecting the defendant's "argument that he could have known the car was stolen but intended to return it" because the evidence did not support this "hypothesis of innocence," given the defendant's testimony "that he did not know the car was stolen"). In view of these elements, we are not convinced that Section 18.2-108 proscribes Solis-Flores's imagined offense of knowingly receiving stolen property with intent to return it to its rightful owner.

Solis-Flores, however, contends that such a conviction is possible because Section 18.2-108 does not require, as an element, intent to permanently deprive the owner of her property. And in his view, without this element, receipt of stolen property cannot be a crime involving moral turpitude. We remain unconvinced.

6

First, Solis-Flores has not identified any conviction under Section 18.2-108, real or hypothetical, in which a defendant knowingly received stolen property with dishonest intent yet without intent to continue permanently depriving the owner of the property. While the categorical approach requires us to consider all permutations of the proscribed conduct, it is concerned with "realistic probabilit[ies]," not mere "legal imagination." *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007).

Second, courts and the Board have long held that receipt of stolen property is a crime involving moral turpitude if the offense requires knowledge that the received property was stolen. Courts applying definitions of moral turpitude similar to ours have recognized that, independent of any statutory proscription, it is morally wrong to possess property knowing it has been stolen from its rightful owner; such a crime "speak[s] . . . to the honesty of a person." *De Leon-Reynoso v. Ashcroft*, 293 F.3d 633, 637 (3d Cir. 2002); *see also id.* at 636 ("Courts have held that knowingly receiving stolen property is a crime of moral turpitude."); *Michel v. INS*, 206 F.3d 253, 263 (2d Cir. 2000) (holding receipt crime was "morally turpitudinous because knowledge is a requisite element . . . and corrupt scienter is the touchstone of moral turpitude"); *United States v. Castro*, 26 F.3d 557, 558 n.1 (5th Cir. 1994) ("Convictions for . . . receiving stolen property with knowledge that such property is stolen constitute crimes of 'moral turpitude.'"); *Hashish v. Gonzales*, 442 F.3d 572, 576 n.4 (7th Cir. 2006) ("[R]eceiving stolen property requires the same state of mind, 'knowingly,' . . . and has been recognized as a crime of moral turpitude."); *Okoroha v. INS*, 715 F.2d 380, 382 (8th Cir. 1983) (finding "no basis to overturn" the Board's decision that possessing stolen mail was a crime involving moral turpitude "because knowledge that the

7

article of mail had been stolen was an essential element of the offense"); *De Leon v. Lynch*, 808 F.3d 1224, 1230 (10th Cir. 2015) ("[T]he weight of apposite caselaw from the [Board] and our sister circuits supports the view that knowing the goods to be stolen, alone, is sufficient to render an offense a crime of moral turpitude."); *Nasrallah v. U.S. Att'y Gen.*, 762 Fed. App. 638, 643 (11th Cir. 2019), *rev'd on other grounds sub nom.*, *Nasrallah v. Barr*, 140 S. Ct. 1683 (2020) (holding that "knowledge that the items were stolen" "is enough to qualify as a crime involving moral turpitude").

Many of these courts relied on or deferred to the Board's interpretation of the ambiguous term "crime involving moral turpitude."  While we no longer defer to the Board's interpretation or its view on "what type of conduct involves moral turpitude," *Yousefi v. INS*, 260 F.3d 318, 326 (4th Cir. 2001) (per curiam), Board precedent can still serve "as persuasive authority," *Chavez*, 134 F.4th at 213.  Our Court's "sound definition of moral turpitude . . . is consistent with [the Board's]," *Ortega-Cordova*, 107 F.4th at 411, and "settled, consistent, and persuasive precedents" applying that definition to receipt crimes help inform our inquiry, *Chavez*, 134 F.4th at 221; *see also Loper Bright*, 144 S. Ct. at 2267 (acknowledging that "an Executive Branch interpretation [may have] particular 'power to persuade, if lacking power to control'" (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944))).

The Board has consistently held that receipt of stolen property is a crime involving moral turpitude if the offense requires knowledge that the received property was stolen. *See, e.g.*, *Matter of Salvail*, 17 I. & N. Dec. 19, 20 (BIA 1979) (holding that possession of stolen goods was a crime of moral turpitude, "as it specifically requires knowledge

8

of the stolen nature of the goods"); *Matter of Patel*, 15 I. & N. Dec. 212, 213 (BIA 1975) ("The crime of receiving stolen property involves moral turpitude, if knowledge that the goods were stolen is an element of the offense."), *overruled on other grounds by Matter of Castro*, 19 I. & N. Dec. 692 (BIA 1988).  In its decision below, the Board reiterated this standard and rejected Solis-Flores's argument that receipt of stolen property cannot be a crime involving moral turpitude absent proof that the accused intended to permanently deprive the owner of her property.  As the Board explained, it has never adopted that requirement for receipt offenses but "has always" maintained that "the salient element" for purposes of moral turpitude is "the defendant's *knowledge* of the stolen nature of the property."  J.A. 5.  The Board distinguished an earlier line of cases requiring proof of intent to permanently deprive for "ordinary theft or larceny offenses," explaining that theft and receipt of stolen property are "conceptually distinct."  J.A. 5 n.5.

We are unpersuaded by Solis-Flores's claim that the Board's view has shifted over time.  Solis-Flores contends that, in 1944, the Board ruled that receipt of stolen property could be a crime involving moral turpitude only if it required proof of the receiver's intent to permanently deprive the victim of her property and that this precedent has never been overruled.  The decision was *Matter of K-*, 2 I. & N. Dec. 90 (BIA 1944), and the Board held that a German statute criminalizing receipt of stolen property did not involve moral turpitude because it included "negligent receipt of property by a person acting in good faith."  *Id.* at 91.  The Board explained that, "[w]here property is acquired without knowledge that it is stolen or without intent to deprive the rightful owner of his possession, the offense does not involve moral turpitude."  *Id.*  The Board did not hold, as Solis-Flores

9

would have it, that a statute must require proof the receiver intended to permanently deprive the rightful owner of the property in order to involve moral turpitude. The other Board decisions Solis-Flores cites do not say otherwise. *See*, *e.g.*, *Matter of G-*, 2 I. & N. Dec. 235, 238 (BIA 1945) (holding that "the original theft" involved moral turpitude because the thief intended to permanently deprive the owner of the property and "the appellant's retention of the goods with knowledge that it had been so obtained likewise involve[d] moral turpitude"); *Matter of Serna*, 20 I. & N. Dec. 579, 586 (BIA 1992) (citing *Matter of K-*); *Matter of S-*, 4 I. & N. Dec. 365, 365–366 (BIA 1951) (examining the same German statute as *Matter of K-*).

Contrary to Solis-Flores's argument, cases about theft "do not shed light on the necessary scienter for the receipt or possession of stolen property to be morally turpitudinous."[2] *De Leon*, 808 F.3d at 1229. Theft and receipt of stolen property are distinct offenses that require different mental states and different conduct. While larceny requires intent "to deprive the owner [of the stolen property] permanently," receipt of stolen property requires proof that a theft has already occurred. *Chavez*, 134 F.4th at 214 (internal quotation marks and emphasis omitted); *see Patterson*, 181 S.E. at 282. What makes Virginia's receipt offense morally culpable is the receiver's knowledge that the

---

[2] The Ninth Circuit conflated the Board's precedent on these two different offenses in *Castillo-Cruz v. Holder*, 581 F.3d 1154, 1159–1161 (9th Cir. 2009). The court reasoned, and Solis-Flores argues, that because the Board considers "whether there was an intention to permanently deprive the owner of his property" in assessing whether a theft offense is a crime of moral turpitude, "the same principle would appear to apply to the receipt of stolen property." *Id.* at 1159–1160 (internal quotation marks omitted). Like our sister circuits, "we are not persuaded by the Ninth Circuit's analysis." *De Leon*, 808 F.3d at 1229.

10

property he possesses was stolen from its rightful owner and his dishonest intent to continue acting adversely to the owner's property interest.[3] *Jones*, 2017 WL 586519, at *3; *see Patterson*, 181 S.E. at 282; *cf. Matter of Serna*, 20 I. & N. Dec. at 585 n.10 (observing that possession of stolen property "perpetuate[s] the harm already inflicted" by the original theft).

Changing tack, Solis-Flores alternatively contends that someone could be convicted under Section 18.2-108 for passively receiving benefits flowing from the sale of stolen goods, which would not involve moral turpitude. In support of his contention, Solis-Flores relies on *Whitehead v. Commonwealth*, No. 1699-06-3, 2008 WL 762189 (Va. Ct. App. Mar. 25, 2008), *rev'd*, 684 S.E.2d 577 (Va. 2009). There, the defendant's partner stole personal property, sold it, and used the proceeds to support the defendant and her child. The Virginia Court of Appeals affirmed her conviction for receipt of stolen property. But the Virginia Supreme Court reversed, deriding the Court of Appeals' decision as "*plainly wrong* in holding that Whitehead 'received' the property merely because she benefited from the proceeds of its sale." *Whitehead*, 684 S.E.2d at 581 (emphasis added). The Virginia Supreme Court emphasized that it had "never recognized this manner of receipt

---

[3] Courts analyzing other criminal receipt statutes have reasoned that "an individual who possesses [property] he or she knows to be stolen *necessarily* intends to deprive the [property's] true owner of his or her rights and benefits of ownership." *Randhawa v. Ashcroft*, 298 F.3d 1148, 1154 (9th Cir. 2002) (emphasis added); *see Santana v. Barr*, 975 F.3d 195, 201 (2d Cir. 2020) ("[I]t was unnecessary for the state legislature to explicitly incorporate an intent to deprive element in Connecticut's receipt of stolen property statute, since an intent to deprive can be inferred from the requirement that the offender knew that the property was stolen.").

for the purposes of this offense" and "such a manner of receipt does not fall within the plain meaning of Code § 18.2-108." *Id.*

Despite the Supreme Court's clear statement of Virginia law, Solis-Flores asserts that the brief existence of the Court of Appeals' contrary 2008 decision demonstrates that, at the time of his conviction in 2000, it was possible for a defendant to be convicted on this erroneous theory. Yet Solis-Flores does not identify a single conviction other than Whitehead's. And, as the Virginia Supreme Court explained, the plain text of Section 18.2-108 does not support such a theory. Solis-Flores therefore has not shown a "realistic probability"—as opposed to a "theoretical possibility"—that Virginia would have applied the statute in such a manner, even in 2000. *Gonzales*, 549 U.S. at 193.

We conclude that Solis-Flores's Virginia conviction for receipt of stolen property was categorically a crime involving moral turpitude. Solis-Flores has not carried his burden to prove otherwise. *See* 8 U.S.C. §§ 1229a(c)(4)(A), 1229b(b)(1)(C), 1227(a)(2)(A)(i).

### III.

On remand from the Supreme Court, we affirm the Board's holding that Solis-Flores's conviction for receipt of stolen property rendered him ineligible for cancellation of removal. Accordingly, we deny his petition for review.

*PETITION DENIED*